297 Ga. 74
FINAL COPY

S15A0189. HENRY v. THE STATE.

BLACKWELL, Justice.

Brandon Henry was tried by a Lowndes County jury and convicted of murder and other crimes, all in connection with the fatal shooting of John Golden. Henry appeals, contending that the evidence is legally insufficient to sustain his convictions and that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no error, and we affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that Cassandra Reynolds purchased an AK-47 for Henry's use and kept it in a

---

[1] Golden was killed on August 9, 2010. Henry was indicted on April 1, 2011 and charged with malice murder, burglary, and unlawful possession of a firearm during the commission of a felony. His trial commenced on September 24, 2012, and the jury returned its verdict the next day, finding him guilty on all counts. Henry was sentenced to imprisonment for life for malice murder, a consecutive term of imprisonment for ten years for burglary, and a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony. Henry timely filed a motion for new trial on September 28, 2012, and he amended it on January 17, 2014. The trial court denied his motion on April 10, 2014, and Henry timely filed a notice of appeal to the Court of Appeals on April 24, 2014. The case was transferred to this Court on June 4, 2014, where it was docketed for the January 2015 term and submitted for decision on the briefs.

closet in her home. On the evening of August 9, 2010, Henry attended a party, where he broke up one of several fights involving Nemiah Robinson. Golden, who was Robinson's stepfather, also intervened before returning home. Meanwhile, Henry went to Reynolds's house, entered it by kicking in a window, grabbed Reynolds, pushed her into the closet, and "tore everything down in the closet" until he found the gun. After Henry left Reynolds's home, Tressie Anthony saw him on the street yelling, cursing, saying that he had a loaded AK-47, and asking "where was the guy who had his shirt off outside talking trash." Anthony then saw Henry step onto Golden's front porch and repeatedly fire the AK-47, striking Golden 15 times and killing him. Shortly afterwards, Henry told a lifelong friend that he had shot someone, and he threw unspent bullets and cartridges (of the same caliber used in the shooting) over a fence behind his girlfriend's house.

Henry argues in a cursory manner that the evidence is not sufficient to support his conviction of malice murder, and he confuses the standard of review, asserting that the verdict is not consistent with the weight of the evidence. "When we consider the legal sufficiency of the evidence, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight

2

of the evidence, leaving the resolution of such things to the discretion of the trier of fact." Walker v. State, 296 Ga. 161, 163 (1) (766 SE2d 28) (2014) (citation and punctuation omitted). Applying the proper standard of review, we conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Henry was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Henry also contends that his trial counsel was ineffective in several respects. To prevail on a claim of ineffective assistance, Henry must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Henry must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Henry must show "a reasonable probability that, but for counsel's

3

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and we conclude that Henry has failed to carry it.

(a) Henry claims that his lawyer failed to consult with him properly. Henry testified that his lawyer met with him only twice for a short time and would not listen to him. "Although this testimony was rebutted by that of counsel, in any event, there is no magic amount of time which counsel must spend in actual conference with his client." Lowe v. State, 295 Ga. 623, 627 (4) (759 SE2d 841) (2014) (citation and punctuation omitted). See also Glass v. State, 289 Ga. 542, 548 (6) (a) (712 SE2d 851) (2011). The lawyer testified that Henry was a "jerk" who would "rant and rave like a crazed lunatic" and that the lawyer would finally just leave. To the extent that there was a restriction of communication between Henry and his lawyer, the evidence supports a finding that it was due to Henry being an uncooperative and belligerent client. See Davis v. State, 295 Ga. 168, 171 (3) (b), n. 3 (758 SE2d 296) (2014). The lawyer's

4

testimony shows that he provided Henry with a copy of discovery and made reasonable efforts to discuss with Henry the charges against him, the possibility of entering a guilty plea, and the advisability of testifying on his own behalf. See Williams v. State, 281 Ga. 196 (637 SE2d 25) (2006). Having reviewed the testimony of Henry and his trial lawyer at the hearing on the motion for new trial, we conclude that Henry failed to show inadequate communication by his lawyer. See Browder v. State, 294 Ga. 188, 193 (4) (751 SE2d 354) (2013). Moreover, Henry "does not specifically describe how additional communications with his lawyer would have changed the outcome of his trial." Glass, 289 Ga. at 548 (6) (a) (citations and punctuation omitted). See also Lowe, 295 Ga. at 627 (4).

(b) Henry also asserts that his lawyer failed to investigate the case properly by interviewing several witnesses. The lawyer did interview Reynolds and Anthony, but Henry complains that his lawyer failed to investigate a man who was living with Reynolds, a man who, Henry argues, had access to the AK-47 and could have been the killer. Reynolds testified, however, that the man only lived with her off and on and that he did not know about the gun in her closet. The lawyer's testimony indicated that the other man was not seen at the

5

party and had nothing to do with the case, and Henry neither called the man to testify on motion for new trial nor otherwise showed prejudice resulting from the alleged failure to investigate the potential suspect. See Washington v. State, 294 Ga. 560, 565-566 (3) (755 SE2d 160) (2014). Henry also argues that his lawyer failed to interview Henry's girlfriend even though he told his lawyer that she was the primary alibi witness, but the lawyer testified that the girlfriend refused to respond to the lawyer's calls and letters. See Davis, 295 Ga. at 171 (3) (c). In any event, the State called Henry's girlfriend as a witness at trial, and she gave testimony that was consistent with his alibi defense. Henry has not identified any other particular witness whom his lawyer unreasonably failed to interview, and Henry therefore has failed to show either deficient performance in this regard or any prejudice resulting from the allegedly deficient investigation. See Shank v. State, 290 Ga. 844, 848 (5) (a) (725 SE2d 246) (2012). See also Grant v. State, 295 Ga. 126, 132 (5) (c) (757 SE2d 831) (2014).

(c) Henry contends that his lawyer failed to show to the jury that Reynolds and Anthony were biased by questioning them about their family relationships with Golden. But "[d]ecisions about what questions to ask on cross-examination are quintessential trial strategy . . . and will rarely constitute ineffective

assistance of counsel." <u>Chance v. State</u>, 291 Ga. 241, 247 (7) (b) (728 SE2d 635) (2012) (citations and punctuation omitted). In particular, "[w]hether to impeach prosecution witnesses and how to do so are tactical decisions." <u>Dixon v. State</u>, 275 Ga. 232, 234 (5) (564 SE2d 198) (2002) (citation omitted). Golden was Reynolds's uncle. But Henry's lawyer testified that he did not believe that the jury would find that information relevant to Reynolds's credibility or indicative of bias, given that she testified to her purchase of the AK-47 for Henry's use. Moreover, evidence regarding potential bias or lack of credibility was presented to the jury when Reynolds admitted that she had given conflicting statements, had previously dated Henry for two years, and did not want to be in court. In light of this testimony, it is unlikely that evidence of Reynolds's family connection to Golden would have affected the outcome of the trial. As for Golden's relationship with Anthony, she testified on direct examination that Golden was her first cousin's brother. So if the same evidence had been brought out on cross-examination, it would only have been cumulative of Anthony's testimony on direct. See <u>Hill v. State</u>, 276 Ga. 220, 222 (4) (576 SE2d 886) (2003).

(d) Last, Henry claims that his lawyer failed to make necessary objections. When Henry's lawyer told the jurors during opening statement that they had Henry's life in their hands, the trial court explained at the prosecutor's request that the State was not seeking the death penalty, and the court told the jury that its job was to determine whether the State proved the defendant's guilt "or innocence" beyond a reasonable doubt as to each charge. Henry's lawyer should have objected, Henry argues, because this statement shifted the burden of proof such that Henry's innocence would have to be proven, contrary to the presumption of innocence. But this infirmity is not apparent upon a close examination of the trial court's statement. That statement squarely placed the entire burden of proof beyond a reasonable doubt on the State. Because the State's responsibility was to prove Henry's guilt, the trial court's addition of the phrase "or innocence" was an obvious slip of the tongue. "[A] mere verbal inaccuracy in a charge, which results from a palpable 'slip of the tongue,' and clearly could not have misled or confused the jury is not reversible error." Arthur v. Walker, 285 Ga. 578, 579-580 (679 SE2d 13) (2009) (citation and punctuation omitted). In this case, neither the isolated charge referring to "guilt or innocence" nor the charge as a whole shifted the burden of proof on any issue

8

to Henry. See Roker v. State, 262 Ga. 220, 222 (4) (416 SE2d 281) (1992). See also Roberts v. State, 276 Ga. 258, 260 (4) (577 SE2d 580) (2003). "[A]n examination of the entire charge reveals that the trial court thoroughly charged the jury on the State's burden of proof, the defendant's presumption of innocence, and the fact that the burden of proof never shifts to the defendant [to prove his innocence]." Arthur, 285 Ga. at 580. When the instructions are considered as a whole, there is no reasonable likelihood that the trial court's slip of the tongue shifted the burden of proof to Henry. See Davis v. State, 329 Ga. App. 797, 801-802 (2) (764 SE2d 588) (2014) (where the trial court inadvertently charged the jury that "the burden shifts to the defendant to prove innocence"); Rodriguez v. State, 211 Ga. App. 256, 257-258 (3) (439 SE2d 510) (1993); Bass v. State, 208 Ga. App. 859, 861 (4) (432 SE2d 602) (1993). Because it cannot be said under the circumstances that the trial court's slip of the tongue clearly could have misled the jury, Henry's lawyer did not render ineffective assistance by failing to object. See Arthur, 285 Ga. at 580. "Finally, although [Henry] generally opines that his trial counsel failed to object to leading questions, he fails to identify any specific instances of these alleged deficiencies. It is not this Court's job to cull the record on behalf of the

9

[appellant] to find alleged errors." <u>Maxwell v. State</u>, 290 Ga. 574, 575 (2) (722 SE2d 763) (2012) (citation omitted).

<u>Judgment affirmed. All the Justices concur.</u>

Decided May 11, 2015.

Murder. Lowndes Superior Court. Before Judge Horkan.

<u>Lorie L. Williams-Smith</u>, for appellant.

<u>J. Daivd Miller, District Attorney, Jessica W. Clark, Meredith G. Brasher, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ryan A. Kolb, Assistant Attorney General</u>, for appellee.