In the Supreme Court of Georgia

Decided: May 9, 2016

S16A0255. EDWARDS v. THE STATE.

BLACKWELL, Justice.

Phirronnius Edwards was tried by a Colquitt County jury and convicted of murder and the unlawful possession of a firearm during the commission of a felony, both in connection with the fatal shooting of Billy Hewitt. Edwards appeals, contending that the evidence is insufficient to sustain his convictions, that he was denied the effective assistance of counsel, and that the trial court mishandled a note from the jury. Upon our review of the record and briefs, we see no error, and we affirm.[1]

_____

[1] Hewitt was killed on September 23, 2011. Edwards and Michael Russell were indicted on March 20, 2012, and they were charged with felony murder, armed robbery, and two counts of unlawful possession of a firearm during the commission of a felony. Russell pled guilty to armed robbery and testified for the State at the trial of Edwards, which commenced on December 3, 2012. The jury returned its verdict two days later, finding him guilty on all counts. Edwards was sentenced to imprisonment for life for felony murder and a consecutive term of imprisonment for five years for one count of unlawful possession of a firearm during the commission of a felony. The trial court merged the remaining counts of armed robbery and unlawful possession of a firearm during the commission of a felony into the crimes for which Edwards was sentenced. On December 21, 2012, Edwards timely filed a motion for new trial, which he later amended twice. The trial court denied Edwards's

1. Viewed in the light most favorable to the verdict, the evidence shows that Edwards needed money, and he and Michael Russell planned to rob Hewitt, who worked with Russell at a beef processing plant. On the evening of September 22, 2011, Russell and Hewitt were working on the late shift. Just before midnight, Russell left the plant and met Edwards near a convenience store that was located about 400 feet outside the gate of the plant. Russell left his car parked just down the road from the store, dropped off Edwards at the store, and drove Edwards's silver Dodge Neon back to the plant. When Hewitt left work around 12:25 on the morning of September 23, Russell followed him at some distance to a Chevron gas station — picking up Edwards along the way — and waited in the parking lot while Hewitt purchased some items in the gas station. Hewitt then headed home, and Russell followed, still accompanied by Edwards. As they followed Hewitt to his home, Russell noticed that Edwards had a nine millimeter pistol.

After Hewitt reached his home and turned into the driveway, Russell stopped the car, and Edwards walked to the back of Hewitt's house. Russell

motion for new trial on June 17, 2015, and Edwards timely filed a notice of appeal on July 15, 2015. The case was docketed in this Court for the January 2016 term and was submitted for decision on the briefs.

subsequently heard two gunshots, and Edwards ran back to the car and pulled out some cash and a bank card with Hewitt's name on it. Hewitt was able to run across the street for help, wake the neighbors around 12:50 a.m., and tell a responding officer that he did not know who had shot him. Hewitt later died, however, from a gunshot wound to his abdomen. Meanwhile, Russell and Edwards returned to Russell's car, drove their cars to an apartment, and went back to the Chevron in Russell's car and then on to a Waffle House restaurant. Two nine millimeter shell casings and one bullet were found in Hewitt's yard.

Edwards argues that the evidence is insufficient to sustain his convictions because Russell's testimony implicating him in the armed robbery and killing of Hewitt was not sufficiently corroborated by other admissible evidence. As we have often explained,

> in Georgia, a felony conviction cannot be sustained solely by the uncorroborated testimony of an accomplice. That said, sufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.

3

McKibbins v. State, 293 Ga. 843, 846 (1) (750 SE2d 314) (2013) (citations and punctuation omitted). See also former OCGA § 24-4-8 (in "felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient" and must be supported by the testimony of another witness or by "corroborating circumstances").[2] Moreover, although the timing and details of the crime are not alone sufficient to satisfy the requirement of additional evidence, they may "serve as corroborating circumstances if they are directly linked to the identity of the defendant as the perpetrator of the crime on trial." Lindsey v. State, 295 Ga. 343, 347 (3) (760 SE2d 170) (2014). "And even though evidence of motive without more is insufficient to corroborate the testimony of an accomplice, it can be considered in the determination of whether an accomplice's version of events inculpating a defendant is corroborated." Id. (citations and punctuation omitted). Cf. Gilmore v. State, 315 Ga. App. 85, 91

---

[2] This case was tried under the old Evidence Code, see Ga. L. 2011, p. 99, § 101, and for that reason, we cite former OCGA § 24-4-8. We note, however, that the provisions of former OCGA § 24-4-8 were carried forward into the new Evidence Code and now can be found at OCGA § 24-14-8. See Bradshaw v. State, 296 Ga. 650, 654 (2) (769 SE2d 892) (2015) ("we give the new accomplice provision the same meaning as the old one") (citations omitted).

(1) (d) (726 SE2d 584) (2012) ("mere motive is not sufficient corroboration" (citations omitted)).

In this case, Edwards admitted that he talked with Russell by cell phone on September 23, 2011 at 12:03 a.m. and 12:08 a.m., that a call was made from his cell phone to his girlfriend at 12:05 a.m. (even though Edwards said that he was with her until after 12:30 a.m.), and that he met Russell a little after 1:00 a.m. See Rivers v. State, 296 Ga. 396, 398 (1) (768 SE2d 486) (2015) ("accused's own testimony may be used to corroborate an accomplice's testimony against him" (citation omitted)); Crawford v. State, 294 Ga. 898, 901 (1) (757 SE2d 102) (2014) (cell phone records showing calls between the defendant and the accomplice on the morning of the crimes were part of the corroborating circumstantial evidence of the defendant's participation). Evidence independent of Russell's testimony — specifically, testimony from the county tax commissioner — proved that Edwards owned a silver Dodge Neon, and surveillance video from the Chevron showed a Dodge Neon in the parking lot just minutes before commission of the crimes. See Terrell v. State, 271 Ga. 783, 786 (3) (523 SE2d 294) (1999) (corroborating circumstances included the accomplice being seen driving the defendant's car near the victim's house

5

around the time of the crime). Cf. Hill v. State, 236 Ga. 831, 833 (225 SE2d 281) (1976) (no testimony except the accomplice's that grey ski mask like the one used in robbery belonged to the defendant). Other evidence showed that Edwards had financial problems and, therefore, had a motive for robbery. See Lindsey, 295 Ga. at 347 (3); Terrell, 271 Ga. at 786 (3). And after Russell was arrested, the Georgia Bureau of Investigation recorded a phone call in which Edwards told Russell that he had not used the bank card. Although Hewitt's name was not mentioned in that phone call, it nevertheless amounted to at least slight evidence that Edwards possessed the victim's property, and so it provided additional corroboration of Edwards's participation in the crimes. See McDonald v. State, 296 Ga. 643, 645 (1) (770 SE2d 6) (2015) (possession of necklace worn by the victim was a corroborating circumstance). We conclude that the testimony given by Russell at trial was sufficiently corroborated to sustain the convictions. And in all, the evidence was sufficient to authorize a rational jury to find beyond a reasonable doubt that Edwards was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

6

2. Edwards contends that he was denied the effective assistance of counsel because his trial lawyer failed, he says, to adequately impeach Russell with evidence of his plea agreement in this case. To prevail on a claim of ineffective assistance, Edwards must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Edwards must show that she performed her duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Edwards must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and we conclude that Edwards has failed to carry it.

Before Russell testified, the trial court addressed him in the presence of the jury, and he confirmed that he had pled guilty in this case. On direct examination, Russell testified that he had pled guilty to the armed robbery of Hewitt but had not yet been sentenced. Edwards's lawyer thoroughly cross-examined Russell about his prior inconsistent statements to law enforcement, she then specifically questioned him about his subsequent guilty plea, and he affirmed that he was not pleading guilty to felony murder or the unlawful possession of a firearm during the commission of a felony, but only to armed robbery. Edwards's lawyer then questioned Russell as to whether his testimony at trial was aimed at getting himself out of trouble and whether it amounted to an attempt to help himself. During her closing argument, Edwards's lawyer followed up by reminding the jury that Russell had pled guilty to armed robbery and that felony murder and unlawful possession of a firearm during the commission of a felony had been taken off the table, and she told the jurors that they had to look at whether that was a powerful enough incentive for Russell to come and tell them something that was not true.

Edwards claims that his lawyer failed to elicit specific testimony from Russell that he had been charged in the same indictment with the same offenses

8

as Edwards, that the State had agreed to dismiss the felony murder charge in exchange for Russell's testimony, and that he faced only a ten-year mandatory minimum sentence for armed robbery instead of the mandatory life sentence for felony murder. "But decisions about what questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel. In particular, whether to impeach prosecution witnesses and how to do so are tactical decisions." Henry v. State, 297 Ga. 74, 77 (2) (c) (772 SE2d 678) (2015) (citations and punctuation omitted). "Although an attorney is permitted to thoroughly question a testifying co-defendant regarding the details of any plea agreement, it does not necessarily follow that counsel is ineffective for failing to elicit all details of the agreement." Curtis v. State, 330 Ga. App. 839, 845 (1) (d) (769 SE2d 580) (2015) (citation omitted). "As trial counsel obtained testimony from [Russell] that he had substantial motivation to testify against [Edwards], we cannot say that [her] failure to ask about specific effects of the plea deal was patently unreasonable." Holder v. State, 319 Ga. App. 239, 249 (3) (b) (736 SE2d 449) (2012) (citations omitted). See also Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013) (strategic and tactical decisions, like those about the extent of cross-examination, "will not form the basis for an

ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it" (citation and punctuation omitted)); Crider v. State, ___ Ga. App. ___, ___ (3) (b) (Case Number A15A1922, decided March 7, 2016); Curtis, 330 Ga. App. at 845 (1) (d). Although Edwards also complains that his lawyer failed to obtain admission of documentary evidence of Russell's guilty plea, we cannot say that this failure was patently unreasonable either when, as a result of Russell's testimony, the jury was informed of the plea and "provided with evidence that [Russell] was potentially biased and had motivation to testify against [Edwards]." Curtis, 330 Ga. App. at 845 (1) (d) (footnote omitted). Moreover, for the same reasons, Edwards has failed to show a reasonable probability that, if more details about Russell's guilty plea had been presented to the jury, the outcome of the trial would have been different.

3. Citing Lowery v. State, 282 Ga. 68, 74-76 (4) (b) (ii) (646 SE2d 67) (2007), Edwards complains that the trial court failed to inform his lawyer of the content of a note from the jury indicating that the jury was "deadlocked."[3] It is

---

[3] In its entirety, the note, which was signed by the jury foreperson, read as follows: "This jury is deadlocked 11-1 on all charges. We CANNOT move beyond this point based on the evidence presented. Please Advise."

undisputed that the trial court recessed for lunch when it received the note, and when it later reconvened, the court addressed both Edwards's lawyer and the prosecuting attorney on the record, saying that "the jury has sent a note, and I think from reading the note and taking a break, I'm going to give what's called the <u>Allen</u> charge at the present time, once they come back in." Neither party objected at that time, and when the <u>Allen</u> charge[4] had been given and the jury again sent away to deliberate, both parties confirmed explicitly that they had no exceptions or objections to the charge. In these circumstances, Edwards cannot be heard to complain that the trial court failed to disclose the content of the note. See <u>Daniel v. State</u>, 292 Ga. App. 560, 561 (1) (665 SE2d 696) (2008).

That complaint is without merit in any event. At the first hearing on Edwards's motion for new trial, his trial lawyer testified that she did not see the jury's note during the trial, nor was she informed of its contents. But at a subsequent hearing,[5] the prosecuting attorney testified that, before the trial

---

[4] See <u>Allen v. United States</u>, 164 U. S. 492 (17 SCt 154, 41 LE 528) (1896).

[5] The trial court held a second hearing pursuant to the State's request to reopen the motion for new trial to present further testimony and evidence. The court was authorized to reopen the evidence on motion for new trial to hear additional testimony on this matter. See <u>Lewis v. State</u>, 277 Ga. 534, 539 (3) (592 SE2d 405) (2004).

court's lunch recess, he and Edwards's lawyer had met with the judge in his chambers, and the jury's note was read and discussed. In its order denying the motion for new trial, the trial court expressly credited this testimony and found that Edwards's lawyer "was present for the reading of the jury note, was aware of the contents of the note, and had ample opportunity to ask for the discussions in chambers to be put on the record along with the opportunity to object to the Allen charge or any other handling of the note." That finding is not clearly erroneous, and the trial court did not mishandle the note from the jury.[6]

Judgment affirmed. All the Justices concur.

---

[6] In the alternative, Edwards argues that his lawyer was ineffective to the extent that she failed to object to the Allen charge and request that the trial court instead declare a mistrial due to the "deadlocked" jury. Edwards has failed to show, however, that the Allen charge was impermissibly coercive, see Scott v. State, 290 Ga. 883, 888 (6) (725 SE2d 305) (2012), and he likewise has failed to show that a mistrial was required. See McKee v. State, 277 Ga. 577, 579 (5) (591 SE2d 814) (2004). Because there has been no showing that the Allen charge was objectionable or that a mistrial was necessary, Edwards has failed to support this claim of ineffective assistance by demonstrating any deficient performance by his trial lawyer or any prejudice as a result of that deficiency. See Scott, 290 Ga. at 890 (7) (d); Sharpe v. State, 288 Ga. 565, 570 (8) (707 SE2d 338) (2011); Hampton v. State, 279 Ga. 625, 629 (9) (619 SE2d 616) (2005).