**THIRD DIVISION
ELLINGTON, P. J.,
ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**September 8, 2017**

# In the Court of Appeals of Georgia

A17A1048. MALLERY v. THE STATE.

ELLINGTON, Presiding Judge.

A Dekalb County jury found Clinton Mallery guilty of armed robbery, OCGA § 16-8-41 (a); and aggravated assault, OCGA § 16-5-21 (a) (2). Mallery appeals from the order denying his motion for a new trial, contending that his trial counsel was ineffective. Finding no reversible error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows the following. The victim, known by her neighbors as "the candy lady," sold candy, sodas, tobacco, and other sundry items from her DeKalb County apartment. The victim knew Mallery by his street name, "Fly," was familiar with him from the

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

neighborhood, and had sold him candy and tobacco on several occasions. She had also driven him and his girlfriend to the store once. The victim's husband also knew Mallery and had tried to help him find a job. The victim's husband testified that Mallery was aware that he owned a handgun.

Around 6:30 p.m. on July 18, 2012, while the victim's husband was at work, Mallery knocked at the victim's apartment door. When the victim opened the door, Mallery asked her for a cigarette. As the victim turned away to get the cigarette, Mallery and an accomplice forced their way inside the apartment. Mallery pointed a handgun at the victim's head and ordered her to lie down on the floor. The accomplice asked the victim if she had a gun and, when the victim said no, the accomplice said: "She's lying. Murk that bitch."

The robbery was briefly interrupted by a knock at the victim's door. The victim heard a child outside asking to buy something. The accomplice told the victim to say that she was closed, and she complied. When the child left, Mallery struck the victim's head with his gun, causing her to momentarily lose consciousness. When she awakened, she was lying on her bedroom floor. The accomplice was gone, but Mallery stood in the doorway. He shot the victim in the head, causing her to lose consciousness again. Then he shot her four more times, in the neck, chest, abdomen,

and hand. Mallery and his accomplice stole the victim's cash, purse, laptop computer, cell phone, and the victim's husband's handgun.

Shortly after Mallery left, the victim regained consciousness and stumbled from her home to her next-door neighbor's apartment. She knocked on his door and collapsed into his arms when he opened the door. The victim told her neighbor that she had been robbed. The neighbor called 911 and, shortly thereafter, emergency personnel took the victim to the hospital. The neighbor testified that, about six or seven minutes before the victim came over, he had heard two male voices outside the victim's apartment door and then he heard a loud disturbance.

While the victim was being prepared for surgery, she told the police that "Fly" had shot her, that she knew him and his girlfriend from the neighborhood, and that she had Fly's girlfriend's phone number at home. After she had recovered sufficiently from her surgery, the victim gave the police a more detailed account of the robbery and of Fly, describing his height, build, hairstyle, clothing, arm and facial tattoos, and lip piercings. Later, after their investigation had led them to two possible suspects, the police showed the victim two different photographic arrays, the second of which contained Mallery's photograph. The victim did not identify anyone from the first array; but, when the police showed her the second array, she immediately pointed to

Mallery's photograph. Mallery was later arrested in Mississippi on a fugitive warrant. The victim also identified Mallery at trial as the man who had robbed and shot her.

Mallery testified in his own defense, contending that the victim had been involved in a fraudulent scheme to sell iPhones purchased under stolen identities and that she had intentionally misidentified him as the shooter to protect herself from the more dangerous person who had actually shot her.

Mallery contends that the trial court erred in denying his motion for a new trial. He argues that his trial counsel's performance was deficient in four respects and that, given the cumulative and prejudicial effect of those deficiencies, he is entitled to a new trial on ineffective assistance of counsel grounds.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

> When assessing prejudice, a court must consider the totality of the evidence before the judge or jury. A verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Moreover, in weighing

prejudice, [a defendant] is entitled to relief if any one error of trial counsel shows that there is a reasonable probability that the outcome of the trial would have been more favorable to him or if the collective prejudice from all of trial counsel's deficiencies meets that standard.

(Citations and punctuation omitted.) *Daughtry v. State*, 296 Ga. 849, 853 (2) (770 SE2d 862) (2015).

"If the defendant fails to satisfy either prong of the *Strickland* test, this Court is not required to examine the other." (Citation omitted.) *Propst v. State*, 299 Ga. 557, 565 (3) (788 SE2d 484) (2016). "In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). With these principles in mind, we review Mallery's claims of ineffective assistance of counsel.

(a) Mallery contends that his trial counsel should have impeached the victim with her criminal history. He argues that evidence of the victim's crimes would have bolstered his defense that, because the victim was a criminal who associated with criminals, there were others beside him who would have been motivated to rob and shoot her.

5

It is undisputed that the victim had been convicted of several crimes in South Carolina, including 2002, 2005, and 2011 misdemeanor convictions for writing fraudulent checks and a 2004 felony conviction for financial transaction card theft.[2] The victim also had a 2009 federal conviction for "aggravated ID fraud." Defense counsel did not obtain the victim's out-of-state criminal history prior to trial as she had mistakenly relied on the District Attorney's office to provide it to her.

Pretermitting whether counsel's performance was deficient in this respect, we find no error in the trial court's conclusion that counsel's failure to impeach the victim with her prior criminal record did not prejudiced the defense. Mallery's initial defense was that his nickname was not "Fly," and that the victim had simply misidentified him. However, after Mallery admitted that his nickname was Fly, counsel had to revise the defense theory. Mallery then contended that the victim was involved in criminal activity and that she had *intentionally* misidentified him as the shooter to avoid the wrath of the people who actually shot her.

While impeaching the victim with evidence of her prior crimes may have undermined her credibility, the prior crimes do not in and of themselves suggest a

---

[2] The parties do not cite to, nor have we found in the record, copies of the State's NCIC or GCIC reports documenting the victim's criminal history, nor does the record contain certified copies of those convictions.

motive for why the victim would intentionally misidentify Mallery or anyone else as her shooter. Mallery attempted to provide that motive through his testimony. He testified that the victim had engaged him and others in a fraudulent scheme to purchase iPhones using other people's personal information – including Mallery's and his girlfriend's – but that she did not follow through on the deal. In short, Mallery said that she had "scammed" him and that he was upset about that. The problems with Mallery's defense are that it is highly speculative, it does not identify any other person who may have wished the victim harm and, by painting the victim as a criminal who scammed him, it gives Mallery an additional motive for shooting the victim. Moreover, Mallery opened himself up to cross-examination on a prior inconsistent statement that he had given the police when he was arrested, a statement in which said that he had no quarrel with the victim. Given Mallery's testimony concerning the victim's scams and the overwhelming evidence of Mallery's guilt, the trial court was authorized to find that their existed no reasonable probability that the outcome of the trial would have been different had counsel obtained and used the victim's criminal history to impeach her. See *Daughtry v. State*, 296 Ga. at 861 (2) (i) (counsel's failure to investigate a witness's criminal history and to impeach him with it did not prejudice the defense given the overwhelming evidence of the

defendant's guilt and the fact that others had testified as to the victim's criminal history.).

(b) Mallery contends that his trial counsel failed to properly limit the introduction of evidence of his criminal history.

The record does not show that any witness testified about Mallery's prior criminal history. In fact, defense counsel successfully argued against the admission of prior, similar crimes evidence. Rather, a few witnesses, including Mallery, testified that Mallery had been arrested in Mississippi in connection with the instant crimes. It is well-settled that there is no inherent prejudice associated with the fact that the defendant has been in jail in connection with the case for which he is being tried. See *Bright v. State*, 292 Ga. 273, 275 (2) (a) (736 SE2d 380) (2013) ("We have previously held that evidence that an accused has been confined in jail in connection with the case at issue does not place his character in evidence.") (citations and punctuation omitted.)

Trial counsel also briefly referenced a prior arrest while cross-examining a detective concerning a photo that the detective had used in his photographic line-up. That photo was taken following Mallery's arrest in 2008. Counsel's purpose in identifying the 2008 booking photo was to contrast it with Mallery's 2012 booking

8

photo, highlighting the differences in Mallery's appearance and pointing out that the victim's description of the shooter coincided with Mallery's 2008 appearance, not his 2012 appearance. Although this line of questioning revealed a prior arrest, it also had the strategic purpose of creating doubt about the victim's identification of Mallery.

"[D]ecisions about what questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel. In particular, whether to impeach prosecution witnesses and how to do so are tactical decisions." (Citations and punctuation omitted). *Henry v. State*, 297 Ga. 74, 77 (2) (c) (772 SE2d 678) (2015). Given that counsel was attempting to undermine the victim's identification of Mallery, we cannot say that the strategy of comparing booking photographs was patently unreasonable. See *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014) ("Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them.") (citation and punctuation omitted).

(c) Mallery argues that his trial attorney was ineffective because she failed to investigate and to call witnesses that advanced the theory that the victim intentionally misidentified him.

Contrary to Mallery's assertion, the record shows that counsel employed an investigator who searched for witnesses to support Mallery's defense that some other person shot the victim. A year-long effort to track down possible suspects proved fruitless, however. Counsel testified that her investigator could not find the apartment complex security guards who gave statements about having seen a car leaving the complex shortly after the shooting. Even if, as Mallery asserts, counsel had been able to locate the car and prove that it was not Mallery's, that would not exclude the possibility that the car was his accomplice's. Moreover, Mallery's alibi witness, his girlfriend, had abandoned him and was not going to be a favorable witness. Even Mallery's mother had nothing of evidentiary value to offer.

Given the record before us, Mallery has not shown that counsel's investigatory efforts were deficient or that other witnesses would have provided helpful testimony. "Without a proffer of evidence that would have been admissible and favorable to his case, [Mallery] has failed to demonstrate a reasonable probability that the testimony of these witnesses would have affected the outcome at trial." *Thomas v. State*, 282 Ga. 894, 896 (2) (a) (655 SE2d 599) (2008).

(d) Mallery argues that counsel's performance was deficient in that she failed to rehabilitate him with his prior consistent statement after the prosecution had impeached him with his inconsistent statement.

During the State's cross-examination, Mallery testified that he had been "scammed" by the victim, and that he was "upset" about it. The State then impeached Mallery with his statement that there was no "bad blood" between him and the victim. Mallery argues that his counsel should have then rehabilitated him with his prior consistent statement. Mallery, however, has not identified the prior consistent statement or explained how it would have been helpful. Moreover, counsel testified that she was reluctant to bring the statement (which had been previously excluded) into evidence because Mallery's story had changed over time and, therefore, "would be more damaging. [She] did not want him to come across as a liar; that he was lying to the police in his original statement."

Defense counsel's decision not to rehabilitate Mallery with evidence that might further erode his credibility is certainly a reasonable trial strategy. "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no

competent attorney would have chosen them." (Citation and punctuation omitted.) *Brown v. State*, 321 Ga. App. 765, 767 (1) (743 SE2d 452) (2013).

For these reasons, we conclude that Mallery has failed to carry his burden of proving that the trial court erred in denying his motion for a new trial on ineffective assistance of counsel grounds.

*Judgment affirmed. Andrews and Rickman, JJ., concur*.