**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS and SELF, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 8, 2018**

# In the Court of Appeals of Georgia

A18A0513. HARRIS v. THE STATE.

ANDREWS, Judge.

Robert Harris was convicted of criminal attempt to commit armed robbery, entering an auto with intent to commit theft, and three counts of armed robbery. He appeals, asserting that he received ineffective assistance of counsel at trial. He also claims that the trial court erred in excusing a prospective juror from the jury panel and in failing to inquire whether he wished to poll the jury following the verdict. For reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, see *Edwards v. State*, 299 Ga. 20, 21 (1) (785 SE2d 869) (2016), the evidence shows that around 1:30 or 2:00 a.m. on June 13, 2014, two masked gunmen approached three young men in a park. With guns drawn, the masked men ordered the three to empty their pockets, take off their

clothes, and lie on the ground. One victim moved too slowly, and a gunman struck him in the head. The robbers picked up the victims' possessions, threw their clothes into a nearby pond, and fled towards the parking lot where the victims had parked their car. The victims later discovered that money had been taken from the car console.

The detective assigned to the case interviewed the victims, but had few leads as to the robbers' identities. A few days later, however, the detective began investigating another incident in which two masked men robbed the manager of a convenience store at gunpoint, taking the manager's wallet and approximately $2,500 in cash belonging to the store. During the robbery, the gunmen ordered the manager to remove his clothing and hit him in the head with a gun. The two men fled when the store's alarm sounded.

Harris eventually became a suspect in the crimes, and police obtained a search warrant for his residence. Inside, police discovered a gun, as well as a pair of shoes linked to the crimes. Harris subsequently admitted to police that he took part in both robberies.

Based on the evidence presented, the jury found Harris guilty of criminal attempt to commit armed robbery, entering an auto with intent to commit theft, and

three counts of armed robbery. He filed a motion for new trial, which the trial court denied, and this appeal followed.

1. Harris first argues that he received ineffective assistance of counsel at trial because trial counsel failed to make an adequate opening statement or closing argument, did not cross-examine the robbery victims, and offered no mitigation evidence before sentencing. To prevail on these claims, Harris must show that trial counsel performed deficiently and that the deficiency "so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency." *Bazin v. State*, 299 Ga. App. 875, 876-877 (683 SE2d 917) (2009) (punctuation and footnote omitted). He cannot meet this burden here.

(a) *Opening Statement*. Harris contends that counsel's opening statement was inadequate because he presented no theory or defense concept for the jury to consider and did not ask jurors to "keep an open mind." During his opening, however, trial counsel asserted that Harris was "not the one who did it" and that he only confessed because he was dehydrated during the lengthy interrogation and "just start[ed] agreeing with [the police]." Counsel further stated: "[W]e ask you just to hold off until the case is over before you make up your mind." Trial counsel thus presented two defense theories – identity and false confession – and asked jurors not to

3

prejudge the case. Although the opening statement was short, Harris has not overcome the "strong presumption . . . that trial counsel's performance was reasonable and that counsel's decisions and choices at trial fell within the broad range of professional conduct as assessed from counsel's perspective at the time of trial and under the specific circumstances of the case." *Jones v. State*, 296 Ga. 561, 564 (2) (769 SE2d 307) (2015).

(b) *Closing Argument.* Harris contends that trial counsel's closing argument was insufficient because counsel did not explain the basic principles of law, such as reasonable doubt and the presumption of innocence. But "the fact that another attorney might have made a different closing argument does not show ineffectiveness." *Bazin*, supra at 877 (2). Trial counsel presented Harris's defense theory during closing argument, and the trial court fully charged the jury on the legal principles governing the case. Under these circumstances, Harris has not demonstrated that counsel's closing argument was deficient or prejudiced his defense. See id.

(c) *Cross-examination.* Trial counsel did not ask the four robbery victims any questions at trial. Harris now challenges this decision, asserting that counsel should have exploited inconsistencies in the victims' testimony. At the motion for new trial

4

hearing, however, trial counsel explained that he did not cross-examine the men robbed in the park because their direct testimony failed to support the indictment's aggravated assault charges, which alleged that Harris had discharged a weapon near each victim, and he did not want to give them an opportunity to testify further. Ultimately, the trial court directed a verdict for Harris on those counts. The record further shows that none of the robbery victims identified Harris at trial. As counsel explained at the new trial hearing: "[I]f they haven't identified him in the direct, I'm not going to do anything to prompt them to do so on cross."

"[D]ecisions about what questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel." *Edwards*, supra at 24 (2) (citation and punctuation omitted). "In particular, whether to impeach prosecution witnesses and how to do so are tactical decisions." Id. (citation and punctuation omitted). Trial counsel made a strategic choice not to cross-examine the victims, and that choice was not patently unreasonable. See *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013) ("[A] tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it.") (citation and punctuation omitted). Moreover, Harris did not establish at the new trial hearing what

5

evidence might have been developed through cross-examination of the victims. He thus has "not met his burden of showing there is a reasonable probability the result of the proceedings would have been different had trial counsel cross-examined" these witnesses. *Christian v. State*, 297 Ga. App. 596, 599 (2) (b) (677 SE2d 767) (2009).

(d) *Sentencing*. Harris criticizes trial counsel for failing to offer mitigation evidence at sentencing. But he "does not suggest what evidence might have served to mitigate his sentence; he offered no witnesses and proffered no affidavits on this issue at the hearing on the motion for new trial." *Davis v. State*, 286 Ga. 74, 78 (4) (686 SE2d 249) (2009). He thus cannot demonstrate that he was prejudiced by counsel's performance at sentencing, undermining his ineffective assistance claim. See id.

2. After the jury returned its verdict, the trial court asked whether the defense wanted the jury polled. Trial counsel declined the poll, and no poll occurred. Harris claims that the trial court erred in failing to determine whether he affirmatively and knowingly "waived his right to poll the jury."

We disagree. Harris has cited no precedent requiring the court to conduct such an inquiry. On appeal, he analogizes this situation to that arising in *Cammer v. Walker*, 290 Ga. 251 (719 SE2d 437) (2011), in which the Supreme Court considered,

6

in the context of ineffective assistance of counsel, whether a trial attorney had provided sufficient legal advice regarding a plea offer. But "we have consistently rejected ineffective assistance claims based on the failure to conduct a poll." *Ellison v. State*, 296 Ga. App. 752, 756-757 (2) (e) (675 SE2d 613) (2009) (footnote and punctuation omitted). And although a criminal defendant has a right to poll the jury, we discern no requirement that the trial court question the defendant about his knowledge and understanding of the right when counsel affirmatively waives it. See *Laing v. State*, 304 Ga. App. 15, 17-18 (1) (695 SE2d 363) (2010) (right to jury poll is derived from common law and may be waived by, among other things, failure to timely request the poll), overruled on other grounds by *Hamm v. State*, 294 Ga. 791, 795-796 (2) & n. 5 (756 SE2d 507) (2014).

Harris also asserts that the trial court should have found that he was harmed by trial counsel's failure to request a poll. Again, however, he has pointed to "nothing in the record to even suggest that the verdict was other than unanimous." *Malerba v. State*, 172 Ga. App. 457, 458 (1) (323 SE2d 666) (1984). This claim of error provides no grounds for reversal.

3. Finally, Harris argues that the trial court erred in striking a juror from the jury panel for cause. During general voir dire of all prospective jurors, Juror 13

indicated that he might not be able to fairly decide the case if selected for the jury. Later, he stated that he had previously been arrested, although all charges were ultimately dismissed. Explaining the incident, the juror asserted that an undercover officer had lied about the facts in court and, after the dismissal, threatened to "get [the juror] next time." The prosecutor asked whether the experience "still affect[ed] [the juror] today." He responded: "It – not really affect me today, but I'm always leery on knowing that law enforcement planted [evidence] on me." The juror then admitted that he would "have a hard time with the law enforcement witness who comes up and say[s], we found some evidence."

The State moved to strike the juror for cause on the ground that he could not be fair if law enforcement officers testified. The trial court granted the motion, noting that the juror had "already formed an opinion about a witness, regardless of . . . what that witness has to say and making an independent decision." We find no error. "The trial court has broad discretion to determine a potential juror's impartiality and to strike for cause jurors who may not be fair and impartial." *DeVaughn v. State*, 296 Ga. 475, 477 (2) (769 SE2d 70) (2015). Juror 13 expressed doubt about his ability to be fair and indicated that he would have a difficult time believing a law enforcement witness. Given these circumstances, the trial court did not abuse its discretion in

8

excusing the juror from the panel. See id. (trial court properly exercised discretion in striking juror who indicated that "his prior bad experiences with the police and prosecutors might affect his judgment in the case and that he was a minister and would not feel comfortable sitting in judgment of others"); *Scales v. State*, 310 Ga. App. 48, 54 (4) (712 SE2d 555) (2011) ("[G]iven the juror's expressions of bias in favor of [the defendant] and against police officers, [the defendant] failed to show that the trial court abused its discretion in striking the juror for cause.").

*Judgment affirmed. Miller, P. J., and Self, J., concur.*