301 Ga. 153
FINAL COPY

S17A0111.  ADKINS v. THE STATE.

PETERSON, Justice.

Following a jury trial, Mark Adkins was convicted of a number of crimes arising from the murder of Frederick Early and the non-fatal shootings of Briona Moore and Pamphylia Baynes.[1]  Adkins appeals and argues that the trial court erred by (1) permitting the State to introduce a purported dying declaration by Early; (2) permitting the State to elicit improper opinion testimony by two law

---

[1] The crimes occurred on May 16, 2013.  On August 7, 2013, a Chatham County grand jury indicted Adkins for malice murder, two counts of felony murder, three counts of possession of a firearm during the commission of a felony, four counts of aggravated assault, and one count of possession of a firearm by a convicted felon.  A jury found Adkins guilty of all eleven counts at the March 2014 trial.  The trial court sentenced Adkins to life for the malice murder conviction (Count 1) and purported to "merge" the two felony murder counts (Counts 2 and 3) into that count.  The trial court sentenced Adkins to five years for each of the three counts of possession of a firearm during the commission of a felony (Counts 4, 7, and 10), to run consecutively, and gave Adkins probation for the offense of possession of a firearm by a convicted felon (Count 11).  As to the four aggravated assault counts, the trial court sentenced Adkins to twenty years for each, running the two convictions pertaining to the assault on Moore (Counts 5 and 6) concurrently to one another and running the two convictions pertaining to the assault on Baynes (Counts 8 and 9) concurrently to one another. The trial court denied Adkins's motion for new trial on November 5, 2015, but vacated the 20-year sentence on one of the aggravated assault convictions pertaining to Moore (Count 5) on the basis that it should have merged with the aggravated assault conviction under Count 6.  Adkins filed a timely notice of appeal, and the case was docketed to this Court for the term beginning in December 2016 and submitted for a decision on the briefs.

enforcement officers; and (3) failing to merge two aggravated assault convictions that were both based on the shooting of Baynes. We vacate in part because the trial court should have merged those two aggravated assault convictions. We otherwise affirm because it was Adkins who introduced the evidence of Early's statement and because the admission of the challenged law enforcement testimony was either not error or, at worst, harmless error.

Viewed in the light most favorable to the verdicts, the trial evidence showed as follows: On May 16, 2013, Baynes and Moore planned to catch a bus so that Baynes could pick up her disability check. They met Early, also known as "Smurf," who had agreed to give Moore money for bus fare. The three talked for about ten minutes on a street corner before a car drove by and a passenger opened fire on the group. Baynes and Moore were shot but survived. Early died of multiple gunshot wounds.

Baynes and Moore were initially interviewed at the hospital; neither victim identified the shooter by name. Moore said the shooter wore a ski mask, and Baynes said she would not be able to identify the shooter. But at trial, both Baynes and Moore identified Adkins as the person who shot them. Both Moore and another eyewitness, Rosalee Smith, testified that they knew Adkins by the

name "Fly Monkey," and Baynes testified that Adkins went by the street name "Fly." On cross-examination, Baynes testified that she heard Early say, "Fly, Fly, Fly," after he was shot.

Adkins claimed mistaken identity, his counsel arguing in closing that there was no physical evidence linking Adkins to the shootings and emphasizing the inconsistent statements of Baynes and Moore. Adkins did not testify. The jury found Adkins guilty of all charged offenses, including malice murder for the death of Early.

1. Adkins does not challenge the sufficiency of the evidence. Nevertheless, we have independently reviewed the record and conclude that the evidence, as outlined above, was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Adkins was guilty of the crimes for which he was convicted under the standard of Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Adkins argues that the trial court erred by permitting the State to introduce Early's purported dying declaration in exception to the hearsay rule. We conclude that Adkins cannot obtain reversal on this basis because his counsel elicited the testimony in question.

3

Just prior to the trial court's preliminary instructions to the jury and the parties' opening statements, defense counsel informed the court that he had been served on the previous Friday with an additional statement by Baynes to the effect that, before he died, Early uttered the words, "Fly, Fly, Fly." The prosecutor explained that Baynes had relayed that remark to her the previous week and that Baynes understood the remark, made after Early was shot, to be a reference to Adkins's nickname, "Fly Monkey." Defense counsel argued that the statement should not be referenced in the State's opening because it was hearsay, posed a Confrontation Clause issue, and was inadmissible unless a hearing were held on its trustworthiness. The prosecutor argued that it was admissible as a dying declaration. The trial court found "at least on a preliminary basis" that the testimony would be admissible.

In her opening statement, the prosecutor referenced Baynes's expected testimony, telling the jury, "Pammy will tell you that she heard Smurf struggling, breathing, she heard him saying, 'Fly, Fly, Fly.'" Defense counsel objected on the basis of hearsay, and the trial court responded, "It's on the record. It's overruled." The prosecutor promptly added that the testimony would show that Adkins's street name was Fly Monkey and most people call

4

him Fly.

The prosecutor did not elicit testimony about the statement in her direct examination of Baynes, although Baynes testified on direct examination that Adkins went by the street name Fly. On cross-examination, defense counsel initiated the following line of questioning:

Q: Now that's three interviews, two on the day of the shooting and one on six eleven thirteen, and you never mentioned the name "Fly," did you?
A: 'Cause I didn't know his name.
Q: Okay. Now, last week, on March 6th, which would have been last Thursday, is that correct? You spoke to the Prosecutors in the D.A.'s office on the sixth floor of this building?
A: Uh-huh (affirmative indication).
Q: And that is the first time that you mentioned hearing Smurf say, "Fly, Fly, Fly" —
A: Yeah.
Q: — after he was shot.
A: Yeah.
Q: You never mentioned that before.
A: No.

Later in his cross-examination of Baynes, defense counsel brought up the subject again:

Q: Okay. So last Thursday is the first time you mentioned Fly.
A: Yeah.
Q: You say that Smurf said, "Fly, Fly, Fly."
A: Yeah.
Q: Was he telling you to run?

5

A: No.  He said that after he shot him.
Q: So what did he say exactly?  That's what I'm trying to get at.
What did Smurf say exactly?
A: Fly, Fly, Fly (whispering).
Q: That's what Smurf said.
A: Yes, . . . shot him.

The State argues that any error in the admission of Early's statement through Baynes's testimony was induced, as the testimony was elicited by defense counsel.  A defendant generally cannot complain on appeal about the admission of evidence that he introduced himself, even when he does so after the trial court has overruled his objection to the admissibility of that evidence. See Givens v. State, 273 Ga. 818, 822 (3) (546 SE2d 509) (2001); Brown v. State, 193 Ga. App. 26, 27-28 (4) (386 SE2d 903) (1989); accord Ohler v. United States, 529 U.S. 753 (120 SCt 1851, 146 LE2d 826) (2000).  Although we may take notice of plain errors affecting substantial rights even when an error is not brought to the attention of the trial court, OCGA § 24-1-103 (d), "[w]here invited error exists, it precludes a court from invoking the plain error rule and reversing."  United States v. Baker, 432 F3d 1189, 1216 (11th Cir. 2005) (citation and punctuation omitted), abrogated on other grounds by Davis v. Washington, 547 U.S. 813 (126 SCt 2266, 165 LE2d 224) (2006); see also

6

United States v. Parikh, 858 F2d 688, 695 (11th Cir. 1988) (defendant's invited error "neither plain nor reversible error"); Cheddersingh v. State, 290 Ga. 680, 682-684 (2) (724 SE2d 366) (2012) (explaining that affirmative waiver, as opposed to mere forfeiture by failing to object to jury instruction, prevents a finding of "plain error" under OCGA § 17-8-58 (b)). Here, the testimony by Baynes about which Adkins complains on appeal was elicited by Adkins's counsel.

Adkins argues that he did not induce the alleged error in admission of the purported dying declaration because he objected to the mention of the statement during the State's opening. Although Adkins objected to the admissibility of the evidence, however, his introduction of the evidence after the State failed to introduce it waived his previous objection. When the State did not introduce evidence of the statement during Baynes's direct testimony, Adkins had the option to not do so either. Indeed, if neither party had introduced evidence of the statement, Adkins might have pointed out in his closing argument to the jury that the State had failed to present a key piece of promised evidence. Instead, he elected to present that evidence himself. He cannot complain now that the jury heard that evidence.

7

3. Adkins also appeals his convictions on the basis that the trial court in two instances erred by permitting the State to elicit improper opinion testimony from two law enforcement officers. We find that the admission of one officer's testimony was not error and that any error in the admission of the other officer's testimony was harmless.

(a) *Sergeant Manuel's testimony*.

Adkins argues that the trial court erred by allowing Sergeant Tiffany Manuel of the Savannah-Chatham Metro Police, who interviewed Baynes and Moore at the hospital, to give improper opinion testimony. Manuel was called to testify by the defense. Manuel testified that she first interviewed Moore, who told her that the driver was the shooter and only occupant of the vehicle and that he had long dreadlocks and brown skin and was wearing a black ski mask. Manuel testified that she then interviewed Baynes, who said there were two people in the car, with the passenger being the shooter. Baynes told Manuel that the shooter was a black male with a short haircut. Given discrepancies between the two women's stories, Manuel testified, she returned to Moore, who maintained that the shooter was the only person in the vehicle and she could see only his dreadlocks.

8

On cross-examination, the prosecutor revisited Manuel's initial interviews of Moore and Baynes. Manuel reiterated on cross-examination that Baynes told her the shooter had a short haircut and testified that Baynes said neither of the two occupants of the vehicle had their faces covered. The prosecutor continued:

> Q: Okay. Based on what Briona Moore told you about being able to see the shooter's hair with his ski mask on, did that stand out to you?
> A: It did.
> Q: Why?
> A: Well, typically a ski mask covers your entire head, so it would cover your hair and everything. You might have cut-outs for your eyes and maybe your mouth, but your head would be covered.
> Q: So did that seem like that might not be completely honest?
> A: That's correct.

Defense counsel objected that this was "improper opinion" testimony. The trial court said it would permit the testimony as it was "just the witness' impression."

Adkins argues on appeal that Manuel's testimony as to her opinion that Moore had fabricated the initial reference to a mask bolstered Moore's later identification of him as the shooter. "A witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth. Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury." Manzano v. State,

9

282 Ga. 557, 560 (3) (b) (651 SE2d 661) (2007) (citation and punctuation omitted); see also Butler v. State, 292 Ga. 400, 405 (3) (a) (738 SE2d 74) (2013) (trial witness may not comment on a witness's credibility or lack thereof); OCGA § 24-6-620[2] ("The credibility of a witness shall be a matter to be determined by the trier of fact, and if the case is being heard by a jury, the court shall give the jury proper instructions as to the credibility of a witness."). In considering whether testimony constitutes improper bolstering, we consider the objected-to testimony in context. See Marshall v. State, 276 Ga. 854, 856 (2) (a) (583 SE2d 884) (2003); see also Wiggins v. State, 338 Ga. App. 273, 280 (4) (787 SE2d 357) (2016); Strickland v. State, 311 Ga. App. 400, 403 (2) (a) (715 SE2d 798) (2011). We review the admission of evidence for an abuse of discretion. See Moore v. State, 295 Ga. 709, 712 (2) (763 SE2d 670) (2014).

Manuel's testimony could be read as a comment on the honesty of Moore's trial testimony that she did see the shooter's face. Any error in the admission of Manuel's testimony was harmless, however. A nonconstitutional

---

[2] This provision of the new Evidence Code carried forward with minor revisions former OCGA § 24-9-80, which provided, "The credibility of a witness is a matter to be determined by the jury under proper instructions from the court." See Scudder v. State, 298 Ga. 438, 440 (3) n.3 (782 SE2d 638) (2016).

error is harmless if it is highly probable that the error did not contribute to the verdict. See Lindsey v. State, 282 Ga. 447, 450 (2) (651 SE2d 66) (2007). We consider the context of the testimony in evaluating whether its admission was harmless. See Bly v. State, 283 Ga. 453, 459-460 (3) (660 SE2d 713) (2008) (reviewing bolstering testimony "within its context," including strength of other evidence of guilt and that the testimony was "deliberate" and witness "never retreated from the bolstering testimony," to determine that its admission was not harmless error); Lindsey, 282 Ga. at 450 (2) ("If the error is relevant to the issues in dispute, not cumulative of other evidence, not beneficial to the defendant and uncorrected by the trial court, then there is perhaps no reason for saying it is harmless, but it may nevertheless be harmless in the context of the entire case.") (citation and punctuation omitted). In her challenged testimony, Manuel pointed out what she said was an internal inconsistency in Moore's initial statement. This actually may have helped Adkins, as it underscored inconsistencies in Moore's statements. This was in line with the primary defense strategy of challenging the reliability of Baynes's and Moore's identification of Adkins as the shooter by pointing out inconsistencies in their statements. Moreover, the State's case did not turn exclusively on Moore's

11

credibility, as Baynes also identified Adkins as the shooter, and testified that Early had identified Adkins as the shooter, as well. We thus find it highly probable that the admission of Manuel's isolated remark did not contribute to the verdict and thus any error in admitting the testimony was harmless.

(b) *Detective Sammons's testimony.*

Adkins also argues that the trial court erred in allowing certain testimony by Detective Alan Sammons of the Savannah-Chatham Metropolitan Police Department, who testified regarding the interviews of Moore and Baynes that he conducted about a month after the shootings. Sammons testified that Baynes provided a description of the shooter and picked Adkins out of a photo array, but did not provide a name of the shooter. On cross-examination, Sammons testified that, before showing Baynes the photo line-up, he did not ask her to provide "specific facial features" of the alleged shooter. On re-direct examination, the prosecutor asked Sammons to explain why he had not asked Baynes for that information. Sammons replied, "My instinct told me she knew who the shooter was, that she already had seen him." Defense counsel objected that this was "[i]mproper opinion" testimony because the witness was "talking about his instincts. He's not Spider Man." The trial court overruled the

objection, finding that Sammons was "explaining his course of conduct."

Here, Sammons's testimony that his "instinct" told him that Baynes knew the identity of the shooter was offered to explain why he had not asked Baynes to provide more detailed information on the shooter's facial features, after the defense raised a question about that matter. The prosecutor did not ask Sammons whether he thought Baynes's various statements to him or her testimony before the jury were true. That factor stands in contrast to the circumstances of Word v. State, 308 Ga. App. 639 (708 SE2d 623) (2011), cited by Adkins. In that case, the Court of Appeals held an officer's testimony inadmissible where the prosecutor asked the officer whether the officer thought the victim had told the truth about being robbed, then elicited the officer's testimony that he did not think the victim initially was truthful when he said he did not know who had robbed him. Id. at 639-642. Sammons's remark about his "instinct" was not a comment on Baynes's credibility but an explanation of why Sammons conducted his investigation the way he did, after the defense had raised questions about that investigation. See Marshall, 276 Ga. at 856 (2) (a) (rejecting argument that trial court allowed officer to give improper opinion testimony, in part on basis that the testimony was elicited so that officer might

13

explain his decision not to write a report, the subject of extensive questioning by the defense); Strickland, 311 Ga. App. at 403 (a) (detective's testimony that she had "ascertained that a molestation incident occurred" not a comment on the child molestation victim's credibility but an explanation of why the officer ended the interview of child and referred child to advocacy center). The trial court did not abuse its discretion in allowing Sammons's testimony.

4. Finally, Adkins argues that the trial court erred in failing to merge Counts 8 and 9, which each charged aggravated assault based on Adkins shooting at Baynes.[3] We agree with Adkins that his conviction and sentence as to Count 8 must be vacated in this respect.

Under OCGA § 16-1-7 (a) (2), "[w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime" but may not be convicted of more than one crime if "[t]he crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct."

---

[3] For reasons that are unclear, the trial court granted Adkins's motion for new trial to the extent that Adkins argued the court should have merged Counts 5 and 6, the corresponding aggravated assault counts naming Moore as the victim, but did not do the same for Counts 8 and 9.

14

To determine whether one crime merges into the other as a lesser included offense, "we examine whether each offense requires proof of a fact which the other does not." Long v. State, 287 Ga. 886, 888 (2) (700 SE2d 399) (2010) (citations and punctuation omitted). Here, Adkins was convicted under Count 8 for the aggravated assault of Baynes by the use of a deadly weapon, which required proof of (1) an assault (2) by the use of a deadly weapon. He also was convicted under Count 9 for the aggravated assault of Baynes by shooting at her from a moving vehicle, which required proof of (1) an assault (2) by discharging a firearm (3) from a moving vehicle (4) toward a person or persons (5) without legal justification. OCGA § 16-5-21 (b) (4). Discharging a gun is one means of using a deadly weapon. See Rushin v. State, 180 Ga. App. 276, 276 (1) (348 SE2d 910) (1986) ("The term 'shooting' . . . clearly denotes the use of a deadly weapon."). Count 9 required proof of something Count 8 did not: that Adkins shot a gun from a moving vehicle, toward a person or persons, without legal justification. But the converse is not true; there is no element of aggravated assault with a deadly weapon that is not contained in aggravated assault by discharging a weapon from a moving vehicle. The conviction and sentence entered for Count 8 must therefore be vacated and the case remanded to the trial

15

court for resentencing.

Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur.

Decided May 15, 2017.

Murder. Chatham Superior Court. Before Judge Walmsley.

Amy L. Ihrig, for appellant.

Meg E. Heap, District Attorney, Christine S. Barker, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.