**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

NOTICE: Motions for reconsideration must be
physically received in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**APRIL 8, 2026**

# In the Court of Appeals of Georgia

A26A0535. NEAL v. THE STATE.
A26A0579. BOYD v. THE STATE.

PADGETT, Judge.

These companion cases concern two co-defendants, Hakeem Neal and Lokari Boyd. Following a joint trial, a jury found Neal and Boyd guilty of home invasion and armed robbery. In Case No. A26A0535, Neal appeals from the trial court's denial of his motion for directed verdict and motion for new trial, arguing that the evidence was insufficient to support his convictions. In Case No. A26A0579, Boyd asserts that he received ineffective assistance of counsel and that plain error was committed when the trial court admitted a statement he claims violates the Confrontation Clause. For the reasons that follow, we affirm in both appeals.

"On appeal from a criminal conviction, the standard for reviewing the sufficiency of the evidence is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt."[1] *Bronner v. State*, 364 Ga. App. 280, 280 (874 SE2d 474) (2022) (citation modified). "Under this review, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." *Dorsey v. State*, 303 Ga. 597, 600(1) (814 SE2d 378) (2018) (citation modified).

With these principles in mind, the evidence shows that K. D. and R. M. worked at the same gas station convenience store and lived together as roommates in a Greensboro residence. On April 17, 2022, R. M. closed the store around midnight and went home, where K. D. was asleep in his room. At some point between 2:00 a.m. and 3:30 a.m., R. M. was washing dishes in the kitchen after eating dinner when he heard a "loud sound" at the front door. Suddenly, two men wearing ski masks burst into the house. One of the men brandished a handgun at R. M. and the second man demanded money. The noise jarred K. D. awake. He overheard R. M. say, "Take

---

[1] As applicable to Case No. A26A0535, we note that "the standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction." *King v. State*, 364 Ga. App. 263, 265 (874 SE2d 439) (2022) (citation modified).

2

money. Don't shoot me." K. D. opened his bedroom door and made eye contact with the man with the gun, whom K. D. described as an "extremely tall" black male. K. D. testified that he recognized the man with the gun by his "height and eyes" as a frequent visitor to his convenience store who had been "banned" from the store by local police over his "disruptive" behavior, including shoplifting. K. D. shut his bedroom door and called 911.

Meanwhile, R. M. handed the men $640 dollars and they left. As they were leaving, R. M. noticed a third man standing by the front door. Because he was "very scared," R. M. did not make eye contact with the assailants; he described the man with the gun as a tall black male and the man who demanded money as a slim, young black male.

Law enforcement responded to the scene. The responding officer, a fifteen-year veteran of the Greensboro Police Department, was familiar with K. D. and R. M. from his patrol of local 24-hour stores. When K. D. described the man with the gun, the officer suspected Boyd, who the officer knew to be about six feet five to six feet seven inches tall.[2] The officer testified that two months prior to this incident, he had warned Boyd and his "good friend[]" Neal not to return to the convenience store where K. D. and R. M. worked. The officer indicated that typically "[i]f you saw

---

[2] At trial, K. D. identified Boyd as the person who pointed the gun at him.

3

[Boyd], you saw [Neal]." While on scene, the officer observed a fresh shoe print on the breached front door and called for an investigator.

The investigator developed a third suspect, J. W., a then-juvenile who was a known associate of Boyd's and Neal's. After receiving permission from J. W.'s parents, the investigator searched their residence and retrieved a pair of Nike Air Force One tennis shoes. According to the investigator, the size, ridge pattern, and markings on the sole of J. W.'s Nike shoes matched the shoe imprint that was left on K. D.'s and R. M.'s door.

J. W. was arrested and questioned by police. He told the officers that on the night of the robbery, he met up with Boyd, whom he knew as "Tall," and Neal; they walked over to the victims' house and Boyd told him to kick in the door. When Boyd and Neal went inside the house, J. W. stood outside by the front door as a lookout.

Boyd and Neal were subsequently arrested and charged, along with J. W., with home invasion and armed robbery. At trial, the victims testified as to the events on the night of the home invasion. J. W., however, recanted his prior statement. Although he acknowledged that he incriminated Boyd and Neal in his statement to law enforcement, he testified at trial that he "made the whole thing up," and that he

4

could not say for sure whether Boyd and Neal committed the armed robbery because "[he] wasn't there."[3]

Boyd and Neal were each interviewed by a detective and their recorded interviews were played for the jury. Boyd denied any involvement in the home invasion; nor did he implicate Neal. Neal, likewise, disclaimed responsibility for the home invasion. He told the detective that on the night of the incident, he arrived at his girlfriend's house at 12:30 a.m. and did not venture out the rest of the night.[4] The detective spoke with the girlfriend to corroborate Neal's alibi.[5] According to the detective, the girlfriend confirmed that Neal was at her house "all night," but then contradicted herself. When pressed about the nature of the contradiction on cross examination, the detective explained that the girlfriend said that Neal was at the house when she left around 2:00 a.m. and that he was still there when she returned home at 4:00 a.m. On redirect, the detective expounded, without objection, that the girlfriend was involved in another incident when she left the house and that another officer followed her home in his car and, in so doing, the officer saw Neal.

---

[3] Despite this disavowal, the State introduced evidence that J. W. had been adjudicated delinquent in juvenile court of home invasion and armed robbery prior to Boyd's and Neal's trial.

[4] The girlfriend's house was an approximate thirty-minute walk from the victims' residence.

[5] The detective's interview with the girlfriend was apparently recorded on his body camera, but the video of the interview was not tendered into evidence.

At the close of the State's evidence, Boyd and Neal each moved for a directed verdict, but the trial court denied their motions. The jury found Boyd and Neal guilty of home invasion and armed robbery, and they were each sentenced to twenty years to serve. They each filed a motion for new trial, later amended, that the trial court denied after conducting hearings. These appeals followed.

*Case No. A26A0579*

1. Boyd contends that the testimony that he had previously shoplifted at the convenience store amounted to inadmissible character evidence under OCGA § 24-4-404(b), and that trial counsel's failure to object to the same constituted ineffective assistance of counsel.[6] As the evidence was admissible as intrinsic evidence, this argument is unavailing.

Under the familiar standard set out in *Strickland v. Washington*, 466 US 668 (104 SCt 2052, 80 LEd2d 674) (1984), to prevail on an ineffective assistance of counsel claim, "a defendant must prove both that the performance of his lawyer was deficient and that he was prejudiced by the deficient performance." *Williams v. State*, 302 Ga. 474, 481(IV) (807 SE2d 350) (2017).

On direct examination, the following line of questioning occurred between K. D. and the prosecutor:

---

[6] For ease of discussion, we are addressing these cases out of order.

Q: Did you see the person — did you see the person who pointed the gun at you that night in your store before?

A: Yes.

Q: Did he do anything in the store that made him familiar to you?

A: Yes.

Q: And what was that? How did you know him from the store?

A: When they came to [sic] store, they used to steal from the store.

Q: You had seen them do that before?

A: Yes.

Q: Is that why you recognized that person?

A: Yes, that is correct.

At the motion for new trial hearing, trial counsel testified that he did not object to K. D.'s testimony because he did not think that the prior shoplifting was "very significant"; nor did he want to "dwell on any past stealings."[7] In its order denying Boyd's motion for new trial, the trial court found that evidence of the prior

---

[7] The responding officer also testified on direct examination that K. D. told him "that both [Boyd and Neal] had possibly been in [the store] stealing."

shoplifting was intrinsic to the home invasion since it "explained the reason that the victim sought to ban [Boyd] from the store and provided the basis upon which the victim made his identification of [Boyd]."

> While OCGA § 24-4-404(b) ("Rule 404(b)") generally controls the admission of other acts evidence, also known as "extrinsic evidence," evidence of criminal activity other than the charged offense is not "extrinsic" under Rule 404(b) . . . [but rather "intrinsic"] when it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense. Evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*Mosley v. State*, 307 Ga. 711, 714(2) (838 SE2d 289) (2020) (citation modified). "[I]ntrinsic evidence remains admissible even if it incidentally places the defendant's character at issue." *Heade v. State*, 312 Ga. 19, 25(3) (860 SE2d 509) (2021) (citation modified).

In this case, evidence of the prior shoplifting — which occurred a mere two months prior to the home invasion and which led to Boyd being banned from the store — was not only relevant to show K. D.'s familiarity with and ability to identify Boyd, but also provided the possible motive for the home invasion. Accordingly, the

8

evidence was reasonably necessary to complete the story of the crime by providing further context for the home invasion and thus was admissible as intrinsic evidence. See *Harris v. State*, 310 Ga. 372, 378(2)(b) (850 SE2d 77) (2020) (evidence was necessary to complete story for the jury, and therefore intrinsic, where it explained motivation and offered context to other witnesses' accounts); *Wimberly v. State*, 302 Ga. 321, 325–26(2)(b) (806 SE2d 599) (2017) (evidence of prior difficulties between victim and defendant admissible as intrinsic evidence). Because this evidence was intrinsic to the crimes charged, any objection to its admission under Rule 404(b) would have been meritless, and "trial counsel does not perform deficiently by failing to make such an objection." *Hawkins v. State*, 376 Ga. App. 520, 527(2)(a) (920 SE2d 439) (2025) (citation modified). Therefore, Boyd cannot prevail on this claim of ineffective assistance. See *Williams*, 302 Ga. at 485–87(IV)(d) (trial counsel was not ineffective in failing to object to intrinsic evidence).

2. In two related arguments, Boyd maintains that plain error was committed when the investigator was permitted to make a certain statement at trial that Boyd claims violated the Confrontation Clause, and that trial counsel was ineffective in failing to request a curative instruction to "mitigate the harm done" by the supposed violation. We find that Boyd cannot be heard to complain about the alleged

9

evidentiary error where his counsel elicited the disputed testimony. Nor do we discern any ineffective assistance.

(a) At one point during cross-examination, the following exchange took place between Boyd's counsel and the investigator:

COUNSEL: Did [J. W.'s] parents say anything about where he was the morning of April 17?

PROSECUTOR: Objection, hearsay.

COURT: Response?

COUNSEL: Well, did anyone tell you anything about the whereabouts of any of the alleged perpetrators?

INVESTIGATOR: Yes.

COUNSEL: Who told you that?

INVESTIGATOR: I had several people tell me different things of where these perpetrators were which includes the victims' house.[8]

Notably, our Supreme Court has held that

[a] defendant generally cannot complain on appeal about the admission of evidence that he introduced himself. . . . Although we may take notice

---

[8] Neal did not object to the investigator's answer.

of plain errors affecting substantial rights even when an error is not brought to the attention of the trial court, where invited error exists, it precludes a court from invoking the plain error rule and reversing.

*Adkins v. State*, 301 Ga. 153, 156(2) (800 SE2d 341) (2017) (citation modified). Because the testimony by the investigator about which Boyd complains was evoked by his counsel, he cannot complain now that the evidence was heard by the jury. See id. at 156–57(2).

(b) Regarding his claim that trial counsel rendered ineffective assistance by not requesting a curative instruction to the purported "improper comment" by the investigator, the record shows that trial counsel was not asked at the hearing on Boyd's motion for new trial about the failure to request the curative instruction. In the absence of any evidence to the contrary, trial counsel's decision not to solicit a curative instruction is presumed to be strategic and consequently Boyd's claim of ineffective assistance fails. See *Scott v. State*, 317 Ga. 218, 222–23(2)(a) (892 SE2d 744) (2023).

Based on the foregoing, we affirm the trial court's denial of Boyd's motion for new trial.

*Case No. A26A0535*

3. In two correlated enumerations of error, Neal contends that the evidence was insufficient to support the jury's verdict and that the trial court erred by denying

11

his motion for a directed verdict at trial. Although not well developed, Neal appears to claim that the evidence was insufficient because J. W.'s testimony implicating him in the home invasion was not sufficiently corroborated.

Under OCGA § 24-14-8, "[t]he testimony of a single witness is generally sufficient to establish a fact." "However, in certain cases, including felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness." *Bowdery v. State*, 321 Ga. 890, 895–96(1) (917 SE2d 718) (2025) (citation modified). Such corroborating evidence "may be circumstantial and slight, and need not be sufficient in and of itself to warrant a conviction, so long as it is independent of the accomplice's testimony and directly connects the defendant to the crime or leads to the inference of guilt." *Bronner*, 364 Ga. App. at 283(1) (punctuation omitted). "The sufficiency of the corroboration is a matter for the jury to decide." *Raines v. State*, 304 Ga. 582, 588(2)(a) (820 SE2d 679) (2018) (punctuation omitted).

While the evidence corroborating J. W.'s testimony was not particularly robust, the evidence adduced at trial, at minimum, provided slight corroboration of his statement implicating Neal in the commission of the home invasion and armed

robbery.[9] Neal fit the general description of the man who demanded money given by R. M. The responding officer testified that Neal and Boyd were good friends who were regularly seen together. The jury could have inferred that Neal and Boyd were motivated to rob the victims due to their banishment from the convenience store where the victims worked.

Moreover, according to the detective, the girlfriend could not account for Neal's whereabouts in the two-hour timeframe when the home invasion occurred. Neal's statement that he arrived at the girlfriend's house (which was within walking distance of the victims' residence) at 12:30 a.m. and did not leave for the rest of the night conflicted with the detective's testimony that another officer saw Neal sometime between 2:00 a.m. and 4:00 a.m. Lastly, the investigator testified that "several people" told him that "these perpetrators" were seen at the victims' house the night of the home invasion. Insofar as the detective's and the investigator's testimony in this regard constituted hearsay, see OCGA § 24-8-801(c) (defining hearsay), Neal did not object to this testimony at trial, and thus the evidence was admissible against him. See OCGA § 24-8-802 ("[I]f a party does not properly object

---

[9] See OCGA § 16-7-5(b) (defining home invasion in the first degree); OCGA § 16-8-41(a) (defining armed robbery).

13

to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible.").

"[A]lthough taken individually, each of the pieces of evidence do not corroborate every detail of [J. W.'s] testimony, taken together, the evidence sufficiently supports [his] testimony because only slight evidence of corroboration is required." *Bowdery*, 321 Ga. at 898(1) (citation modified). See, e.g., *Edwards v. State*, 299 Ga. 20, 22(1) (785 SE2d 869) (2016) (while not conclusive, evidence of motive can be considered in the determination of whether an accomplice's version of events inculpating a defendant is corroborated); *Floyd v. State*, 272 Ga. 65, 66(1) (525 SE2d 683) (2000) (defendant's own statement can be used to corroborate an accomplice's testimony against him).

Accordingly, we find no merit in Neal's claim that insufficient evidence supports his convictions.

*Judgments affirmed. McFadden, P. J., and Watkins, J., concur.*