FINAL COPY
294 Ga. 443

S13A1337.  BELL v. THE STATE.

BENHAM, Justice.

Appellant Stanquise Ramon Bell was sentenced to life imprisonment plus five years upon the jury's verdict finding him guilty of malice murder and other offenses in connection with the May 22, 2010, shooting death of Anthony Carter.[1]  Bell appeals the trial court's denial of his motion for new trial on the ground of ineffective assistance of counsel.  For the reasons set forth below, we affirm.

In the light most favorable to the verdict, the testimony established Bell and others were at a party in a subdivision in DeKalb County where various

---

[1] The crimes occurred on May 22, 2010.  During the September 2010 term, a DeKalb County grand jury returned an indictment charging appellant with malice murder, felony murder (aggravated assault), aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony.  Appellant was tried September 12-15, 2011, and a jury found him guilty on all charges.  For purposes of sentencing, the felony murder count was vacated as a matter of law, the aggravated assault convictions were merged with the malice murder conviction, and the trial court sentenced appellant to life in prison on the malice murder conviction.  The court also sentenced appellant to five years imprisonment for the possession of a firearm conviction, to be served consecutively with the life sentence.  Appellant moved for new trial on October 27, 2011, which was later amended.  After a hearing held on December 18, 2012, the trial court denied appellant's motion for new trial on March 14, 2013.  Appellant timely filed a notice of appeal on April 13, 2013, and the case was docketed in this Court to the September 2013 term for a decision to be made on the briefs.

witnesses described Bell as being "wild" and "under the influence," and testified he had been "drinking and smoking." Bell stood on a car, waved a gun around, and yelled: "I will beat anybody up. I want to fight." When the partygoers heard the police had been called, Bell got into a Chrysler 300 with Darius Mapp, Cachino Minor, and driver Menshack Nyepah heading to another party. Bell was in the back passenger-side seat behind Mapp. Three others — Malcolm Smith, Timothy Epps, and Cordell Whitehead — got into another vehicle and followed the Chrysler. As the Chrysler was pulling out of the subdivision onto Panola Road, Bell held a gun out the back passenger window and fired two shots into the air. After proceeding onto Panola Road, the Chrysler then pulled into the left turn lane at a traffic light at Panola Road and Covington Highway next to the car driven by victim Anthony Carter. Bell looked over at the victim, whose car was stopped at the light, and said to other occupants in the Chrysler, "I'm about to bust this n*****. Do you want me to do it?" As Nyepah and Mapp yelled "No, no, no," Bell put his arm out the back passenger window and fired at the victim, who was struck by a bullet and died from the gunshot wound. Bell then shouted "Go, go, go," and Nyepah "hit the gas" down Covington Highway.

2

The men following in the other car eventually turned around to return to the scene. Smith and Epps gave statements to the police identifying Bell as the shooter based on their knowledge about where Bell was seated in the car, the fact that it was a person who was bare-armed who reached his arm out the window with the gun, that Bell was wearing a tank-style shirt without sleeves, that the arm was muscular, and that Bell was described as "built." Furthermore, although Mapp was also in the Chrysler, also had a muscular build, and was wearing a sleeveless shirt, the witnesses testified that Mapp's skin color was lighter than the arm that reached out the window with the gun and he was sitting in the front passenger seat. The police commenced chasing the Chrysler, and Mapp jumped out and ran from the car. The police abandoned the chase, and Bell was arrested approximately a month later on a fugitive warrant. At trial, Bell's defense was that Mapp was the shooter.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. In opening statements to the jury, Bell's trial counsel asserted that the

State's witnesses were trying to cover up for each other, and she made the following statement concerning their veracity:

> The evidence is going to show you that these young men, including the college student, Mr. Malcolm Smith, [are] not telling the truth.
>
> . . . Now all these young men are going to admit that they lied. They have to. Because they gave two or three different statements.
>
> And they may come in here today and say something different.

During the prosecutor's direct examination of Smith, the prosecutor asked: "Has anybody ever accused you — have I ever accused you, or anybody else accused you of lying or giving a second statement or changing your story in any way?" Smith answered, "No." In his motion for new trial, Bell alleged he received ineffective assistance of trial counsel as a result of her failure to object to the prosecutor's question because it improperly conveyed to the jury the prosecutor's belief in the credibility of the State's star witness. Bell asserts the trial court erred in finding he failed to meet his burden of showing either that trial counsel's failure to object to this question fell below an objective standard of reasonableness or that he was prejudiced by counsel's failure to object.

To prevail on a claim of ineffective assistance of counsel, an appellant

must prove both deficient performance of counsel and prejudice from the deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

> To prove that the performance of his lawyer was deficient, [Bell] must show that his lawyer performed [her] duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. . . . And to prove that he was prejudiced by the performance of his lawyer, [Bell] must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

(Citations and punctuation omitted.) *Powell v. State*, 291 Ga. 743, 746 (2) (b) (733 SE2d 294) (2012).

It is well settled that a prosecutor may not express to the jury his or her personal belief about the veracity of a witness. See *Woods v. State*, 275 Ga. 844,

848 (3) (c) (573 SE2d 394) (2002). In this case the trial court found that, given the context in which the question was asked, this question did not amount to a statement of the prosecutor's personal belief in the witness' credibility but was instead a response to Bell's counsel's opening comments accusing Smith of lying in his police statement. Counsel's comments in her opening statement about the witness' veracity were based upon what she expected the evidence in that case to show and not upon her personal belief. The relevant issue with respect to veracity is what the evidence shows about the witness' credibility and not the prosecutor's or anyone else's belief about whether the witness was lying. The prosecutor's question elicited that neither he nor others, like the police officers who obtained the witness' statement, had ever accused the witness of lying. Accordingly, we do not agree with the trial court's conclusion that this question did not serve to improperly vouch for the witness' credibility. Bell's trial counsel testified at the hearing on his motion for new trial that she should have objected but simply waited until it was too late to do so. But even assuming counsel's conduct was deficient in this respect, the vouching in this case was only implied and occurred in only a single question. The jury was properly instructed that the credibility of the witnesses was for them to

6

determine considering all the facts and circumstances of the case, and that the evidence in the case does not include the opening statements or closing arguments by the attorneys or the questions asked by the attorneys. Given the substantial evidence of Bell's guilt, we agree with the trial court's conclusion that failure to object to the complained-of question in this case did not undermine the fundamental fairness of the trial.

3. Bell asserts the court erred in finding he failed to meet the burden of establishing constitutionally ineffective assistance of counsel with respect to trial counsel's failure to object to the admission of five specific instances of alleged hearsay testimony. First, when asked how Bell was acting prior to the shooting, witness Mapp testified: "Well, he was acting wild. I could tell he was drinking and smoking. Menshack and them told me he had had a few pills and stuff. So I knew he was just, you know, in another mode, or whatever." He stated he did not know what kind of pills the others were talking about. Menshack Nyepah did not testify at trial, and Bell asserts the testimony was hearsay[2] that was introduced to show Bell had actually taken pills or some other

_____

[2] At the time this case was tried, Georgia law defined hearsay evidence as "that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." Former OCGA § 24-3-1 (a).

7

drugs, that the testimony maligned his character, made it appear more likely that he would have committed a senseless act, and that counsel's failure to object fell below an objectively reasonable standard of professional conduct. At the hearing on Bell's motion for new trial, trial counsel admitted she did not object because she "missed it" and that there would have been no strategic reason not to object. Other witnesses had already testified that Bell had jumped up on a car waving a gun, was under the influence, had been drinking liquor, and was acting "like he wasn't in his right mind." Thus, even assuming failure to object to this testimony was erroneous, Bell has not shown that but for this reference to pills of unknown identity there is a reasonable probability that the jury would not have convicted. See *Banks v. State*, 281 Ga. 678, 684 (6) (642 SE2d 679) (2007) (given the strength of the evidence against the defendant it could not be said the trial court erred in determining there was no reasonable probability that the outcome of the trial would have been different if trial counsel had made the objection suggested on appeal).

The second instance of trial counsel's failure to object to alleged hearsay raised on appeal involves the prosecutor's question to Mapp: "So once you turned yourself in, then you stayed in jail until the grand jury declined to indict

you, is that correct?" Shortly thereafter, the prosecutor again asked: "The grand jury declined to indict you, and then you were released from jail after a number of weeks, is that true?" Mapp responded to both questions, "Right." The prosecutor further asked Mapp whether it was correct that no deals were made for his testimony in exchange for his not being prosecuted to which Mapp again answered, "Right." Bell asserts this testimony concerning the grand jury is inadmissible hearsay because the grand jury is an out-of-court declarant and its decision not to indict was offered for its truth. Bell's defense was based upon the theory that Mapp committed the shooting. Thus, Bell asserts trial counsel's failure to object on the ground of hearsay was deficient and the deficiency caused prejudice because the information that the grand jury declined to indict Mapp served to vouch for his innocence and enhanced his witness credibility. We reject the assertion that these questions called for hearsay. Essentially, Mapp was asked whether he had been indicted, a fact that was within his personal knowledge. Consequently, this testimony does not fall within the definition of hearsay that was applicable at the time of this trial: evidence that "does not derive its value solely from the credit of the witness but rests mainly upon the veracity and competency of other persons." Former OCGA § 24-3-1

(a).[3] In fact, on cross-examination at the hearing on the motion for new trial, trial counsel acknowledged that these questions did not call for hearsay. Further, she acknowledged that had she raised an objection on the ground that the prosecutor was leading the witness, he would most likely have simply recast the questions to ask Mapp whether the grand jury had indicted him and whether he made any deals in exchange for his testimony. She also testified that, for this reason, as a matter of trial strategy, she does not find it helpful to make objections to leading questions in every instance where such an objection could be raised. Accordingly, we affirm the court's conclusion that Bell failed to establish that trial counsel's failure to object to these questions on the ground of hearsay or on the ground of leading the witness fell below an objective standard of reasonableness because such objections would have been meritless. We express no opinion, however, as to whether these questions about the grand jury's decision not to prosecute the witness were objectionable on other grounds.

The remaining three instances of trial counsel's failure to object to alleged

---

[3] Effective January 1, 2013, this Code section has been replaced by OCGA § 24-8-801. Ga. L. 2011, p. 99, § 2/HB 24.

10

hearsay concerns the testimony of the investigating officer relating certain out-of-court testimonial statements made to him by witness Cachino Minor and by Menshack Nyepah, who did not testify at trial. The officer testified that during the course of his investigation, he first heard the name "Stan," a name by which Bell was known, in the course of interviewing Minor and Nyepah. He also testified that he had included a photograph of Bell in the photographic lineup he showed to Minor and Nyepah based upon information he obtained from another party and that Nyepah identified Bell as the "Stan" whom Minor later said was with them the night of the shooting. Minor, however, initially claimed he did not recognize Bell in the lineup. Once Nyepah made the identification, the officer challenged Minor and told him he believed Minor was lying, at which point Minor commenced crying, got upset, and stated he was concerned Bell would hurt him if he identified Bell, but then confirmed Bell from the lineup. Even though Nyepah's statements to the officer were testimonial in nature and thus were subject to exclusion pursuant to the Confrontation Clause protections set forth in *Crawford v. Washington*, 541 U. S. 36, 40 (124 SCt 1354, 158 LE2d 177) (2004), admission of this testimony was harmless beyond a reasonable doubt because it was cumulative of other admissible evidence. See *Gay v. State*,

11

279 Ga. 180, 182 (2) (611 SE2d 31) (2005). Further, as noted by the trial court in its order denying the motion for new trial, the hearsay testimony regarding Nyepah's statements to the officer went solely to the fact that the photograph of Bell in the lineup was the person Nyepah knew as Stan; it did not identify Bell as the shooter, as a participant in the incident, place Bell at the scene, or otherwise establish any fact related to Bell's guilt. Consequently, even assuming counsel's failure to object to the testimony concerning Nyepah's identification of Bell was objectively unreasonable, Bell has failed to show prejudice from that error to support a claim for ineffective assistance of counsel. See *Gibson v. State*, 277 Ga. 486 (2) (591 SE2d 800) (2004) (where medical records would have been cumulative of the witness' testimony at trial, defendant failed to establish how trial counsel's failure to introduce those records at trial prejudiced his defense so as to support a claim of ineffective assistance of counsel).

Additionally, Bell asserts ineffective assistance as a result of counsel's failure to object to the officer's testimony that Minor stated he feared Bell and was, at first, afraid to identify him from the lineup. Bell asserts failure to object to this hearsay testimony fell below an objective standard of reasonable

professional representation because it was clearly hearsay and the error was prejudicial because it portrayed Bell as the type of person who would commit the crime charged. As the trial court noted, however, Bell failed to support this ground for his motion for new trial with any argument or citation of authority to the trial court, and thus it did not err in finding he had failed to meet the burden under *Strickland* to show attorney error and prejudice. Moreover, even assuming failure to object fell below an objective standard of reasonable professional representation, we affirm because Bell has failed on appeal to meet the burden of showing a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. See *Powell*, supra, 291 Ga. at 746 (2) (b).

Finally, we reject Bell's assertion that the combined effects of these several alleged attorney errors are sufficient to establish the prejudice required by *Strickland* in order to establish ineffective assistance of trial counsel. With respect to the majority of Bell's allegations, we have affirmed the trial court's findings and conclusions that Bell failed to carry the burden of establishing that trial counsel's performance was constitutionally deficient. Even assuming, for the sake of analysis, trial counsel error with respect to the remaining grounds for

13

Bell's assertion of ineffective assistance of counsel, "having reviewed . . . the trial record, this Court concludes that [Bell] has failed to show prejudice sufficient to sustain his ineffective assistance of counsel claim . . . ." *Schofield v. Holsey*, 281 Ga. 809, 816 (II) (642 SE2d 56) (2007).

Judgment affirmed. All the Justices concur.

Decided January 27, 2014.

Murder. DeKalb Superior Court. Before Judge Barrie.

Gerard B. Kleinrock, for appellant.

Robert D. James, Jr., District Attorney, Leonora Grant, Deborah D. Wellborn, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Rochelle W. Gordon, Assistant Attorney General, for appellee.