302 Ga. 454
FINAL COPY

S17A1141.  BROWN v. THE STATE.

NAHMIAS, Justice.

Appellant Ahmad Edward Brown challenges his convictions for malice murder and other crimes in connection with the shooting death of Deonta Moore.  Appellant contends that he was denied the effective assistance of counsel at trial and that the trial court improperly commented on the evidence. We reject these contentions and affirm Appellant's convictions, but we vacate the trial court's judgment in part and remand the case for correction of a sentencing error.[1]

---

[1]  Moore was killed on June 10, 2010.  On September 9, 2010, Appellant and Andre Allen were indicted by a Gwinnett County grand jury for malice murder, felony murder, aggravated assault, and selling marijuana.  Allen later agreed to testify against Appellant as part of a plea deal. Appellant was re-indicted on April 16, 2014, for malice murder, two counts of felony murder, aggravated assault, selling marijuana, two counts of possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon.  At a trial from May 19 to 28, 2014, the jury found Appellant guilty of all charges.  On June 6, 2014, the trial court sentenced Appellant to serve life in prison without the possibility of parole for malice murder and consecutive terms of five years for each of the three firearm convictions.  The trial court purported to merge the aggravated assault and selling marijuana verdicts into the felony murder verdicts, and then to merge the felony murder verdicts into the malice murder conviction.  The court's merger analysis was erroneous, as explained in Division 1 (c) below.  On June 30, 2014, Appellant's new counsel filed a motion for

1. (a) Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On June 10, 2010, Moore obtained $1,100 in counterfeit currency from a friend; Moore told the friend that he was going to "finesse" (trick) someone with the fake money and share the proceeds with the friend. Using his cousin's cell phone, Moore then contacted Andre Allen to buy three ounces of marijuana. Allen did not have that much marijuana on hand, so he contacted Appellant, who agreed to provide the drugs and to meet Allen and Moore at Moore's apartment complex in Duluth.

Allen drove to Moore's apartment complex, parked his car, and met with Moore. When Appellant arrived, Moore got into Appellant's car and exchanged the counterfeit money for three bags of marijuana as Allen waited by his own car. Moore got out of Appellant's car and began walking away quickly. When Appellant realized that Moore gave him counterfeit money, Appellant yelled at Moore, who ran through the breezeway of Building 1600 and into a grassy field. Allen, who had arranged the drug deal, did not want Appellant to think that he

new trial, which was amended on January 19, 2016. On June 8, 2016, the trial court held an evidentiary hearing, and on September 6, 2016, the court denied the motion. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2017 term and orally argued on June 26, 2017.

2

was involved in the scam, so he chased after Moore. Allen caught Moore in the field, held him down, and told him to return Appellant's "stuff." Carrying a gun, Appellant also chased Moore. When Appellant reached Allen and Moore, Appellant told Allen to get out of the way and started scuffling with Moore. Appellant then fired his gun once into Moore's head, killing him. Appellant and Allen fled, leaving the apartment complex in separate cars.

Shamika Hubbard, who lived in Building 1600, testified that she saw a car pull into a parking spot and later saw two men exit the car, one of whom had a gun and was chasing the other. She heard a gunshot and then saw the car leave the apartment complex. Rafael Rodriguez, who was 17 and lived with his mother at the apartment complex, testified that he saw a man chasing another man near Building 1600, saw the man being chased fall down, and then heard a gunshot and saw two men running away. Rodriguez went home and told his mother that he saw a man get shot, but she did not believe him. The next morning, however, he and his mother discovered Moore's body lying in the bushes and called the police. Near Moore's body, police located a shell casing along with three bags of marijuana weighing a total of 2.6 ounces.

Information from a cell phone found in Moore's pocket led the police to

3

Allen. Allen was scheduled to meet with his probation officer on June 21, 11 days after the shooting. Detective John Richter of the Gwinnett County Police Department went to the meeting to question Allen about Moore's death. During the interview, the video recording of which was played for the jury at trial, Allen described Appellant's role in the shooting while downplaying his own role. Allen was arrested after the interview. Cell phone records showed about 20 calls between Appellant and Allen on the evening of the shooting, and cell tower data showed that for about ten minutes that night, Appellant's cell phone, Allen's cell phone, and the cell phone taken from Moore's pocket were in range of the cell tower covering the apartment complex. Appellant cancelled his cell phone service the day after the shooting.

Appellant was arrested in late July. A jail cellmate testified that Appellant said he shot a man near an apartment complex breezeway after meeting with the man to sell him drugs, that he always kept a gun on him in case something went wrong, and that he disconnected his cell phone number after the shooting.

Allen pled guilty to voluntary manslaughter and was sentenced to 20 years with the last ten to be served on probation. He testified against Appellant, as did his sister and his children's mother, to whom he had described Appellant's role

4

in the shooting in the days after the murder. Appellant did not testify at trial. The defense theory was that Allen lied about Appellant's involvement in the crimes, with defense counsel emphasizing that nobody but Allen identified Appellant at the crime scene.

(b) Appellant does not challenge the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which a judgment of conviction was entered, as well as selling marijuana, see footnote 1 above. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

(c) In sentencing Appellant, the trial court purported to merge the aggravated assault and selling marijuana verdicts into the felony murder verdicts, and then to merge the felony murder verdicts into the malice murder

5

conviction. This merger analysis was erroneous, as Appellant properly acknowledges in his brief. The felony murder counts were actually vacated by operation of law, and therefore the aggravated assault and selling marijuana counts could not be merged into the felony murder counts. See Graves v. State, 298 Ga. 551, 556 (783 SE2d 891) (2016). See also Southall v. State, 300 Ga. 462, 462 n.1 (796 SE2d 261) (2017). The trial court should have merged the aggravated assault verdict into the malice murder conviction, and Appellant should have been sentenced on the selling marijuana count (Count 5), which the court is directed to do on remand.

2.     Appellant's primary claim on appeal is that he was denied the effective assistance of counsel at trial due to his counsel's failure to make several objections.

> To establish that his trial counsel was constitutionally ineffective, Appellant must prove both deficient performance by counsel and resulting prejudice. See Strickland v. Washington, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To show that his lawyer's performance was deficient, Appellant must demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-690. This is no easy showing, as the law recognizes a "strong presumption" that counsel performed reasonably, and Appellant bears the burden of overcoming this presumption. Id. at 689. To carry this burden, he must show that no reasonable lawyer would have done what his

lawyer did, or would have failed to do what his lawyer did not. See Humphrey v. Nance, 293 Ga. 189, 192 (744 SE2d 706) (2013). In particular, "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." Reed v. State, 294 Ga. 877, 882 (757 SE2d 84) (2014).

Even when a defendant has proved that his counsel's performance was deficient in this constitutional sense, he also must prove prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U. S. at 694. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." Harrington v. Richter, 562 U. S. 86, 104 (131 SCt 770, 178 LE2d 624) (2011) (citation and punctuation omitted). Rather, Appellant must demonstrate a "reasonable probability" of a different result, which, the United States Supreme Court has explained, is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694.

The reviewing court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U. S. at 697. In all, the burden of proving a denial of effective assistance of counsel is a heavy one, see Wells v. State, 295 Ga. 161, 164 (758 SE2d 598) (2014), and Appellant has failed to carry that burden.

Davis v. State, 299 Ga. 180, 182-183 (787 SE2d 221) (2016).

(a) Appellant claims first that his trial counsel performed deficiently by failing to object on the grounds of hearsay and improper bolstering when two witnesses testified that Allen told them within days of the shooting that Appellant shot Moore. Such objections, however, would likely have been overruled, and a "lawyer is not required to make an objection that he reasonably

7

believes will fail." Davis, 299 Ga. at 190 (citing Premo v. Moore, 562 U. S. 115, 124 (131 SCt 733, 178 LE2d 649) (2011)).

During cross-examination of Allen, Appellant's counsel attacked Allen's credibility in various ways, including by insinuating that Allen fabricated the story of Appellant's involvement in the shooting in order to receive a favorable plea deal and lower sentence from the State. For example, Appellant's counsel asked Allen if he "cut a deal," "told the police '[w]hatever you need me to do . . . I'm a hundred percent on your side,'" and received a greatly reduced sentence because he was allowed to "plead guilty to manslaughter." The State later called as witnesses Allen's sister, Latoya Allen, and the mother of Allen's two children, Qwiana Bailey; Allen spoke with his sister two days after the shooting, and to Bailey eight days after the shooting. Allen's sister and Bailey both testified that Allen told them that he was the middle man in a drug deal gone bad and that Appellant shot Moore.

Under Georgia's new Evidence Code, which applied to the trial of this case, an out-of-court statement made by a witness is not hearsay if the witness "testifies at the time of trial or hearing, is subject to cross-examination concerning the statement, and the statement is admissible as . . . a prior

8

consistent statement under Code Section 24-6-613[.]" OCGA § 24-8-801 (d)

(1) (A). In turn, OCGA § 24-6-613 (c) says:

> A prior consistent statement shall be admissible to rehabilitate a witness if the prior consistent statement logically rebuts an attack made on the witness's credibility. A general attack on a witness's credibility with evidence offered under Code Section 24-6-608 [evidence of character and conduct of witness] or 24-6-609 [impeachment by evidence of conviction of a crime] shall not permit rehabilitation under this subsection. If a prior consistent statement is offered to rebut an expressed or implied charge against the witness of recent fabrication or improper influence or motive, the prior consistent statement shall have been made before the alleged recent fabrication or improper influence or motive arose.

See Tome v. United States, 513 U. S. 150, 158 (115 SCt 696, 130 LE2d 574)

(1995) (adopting a similar standard for admission of prior consistent statements

under the Federal Rules of Evidence).

During Allen's cross-examination, Appellant's counsel clearly implied

that Allen fabricated the story of Appellant's role in the shooting that Allen told

Detective Richter 11 days after the shooting and repeated on direct examination

at trial.[2] But Allen's sister and Bailey testified that Allen told them the same

story before he went to the meeting with his probation officer and ended up

---

[2] On appeal, Appellant does not challenge the admission of the video recording of Allen's police interview.

9

speaking with Detective Richter, and their testimony logically rebutted the attack that Appellant's counsel made on Allen's credibility. Thus, Allen's statements to his sister and to Bailey were prior consistent statements, not hearsay, and were admissible to rehabilitate, rather than improperly bolster, Allen's credibility. See Bolling v. State, 300 Ga. 694, 701 (797 SE2d 872) (2017); Mosley v. State, 298 Ga. 849, 853 (785 SE2d 297) (2016).

Appellant now suggests that Allen's improper motive arose earlier, before he met with his probation officer and was interviewed by Detective Richter, before he spoke with his children's mother a few days earlier, and even before he spoke with his sister just two days after the shooting. Appellant points to evidence that shortly after the shooting, and before he spoke with his sister and Bailey, Allen consulted with an attorney who was a family friend about how to voluntarily give the police information that he had about the shooting. Therefore, according to Appellant, Allen's statements to the two women were not *prior* consistent statements, because by the time Allen made them he "had already made the decision to cooperate with law enforcement against [Appellant] in order to secure a better sentence for himself."

But there is no evidence that Allen discussed the possibility of a plea

10

agreement or a reduced sentence with the family friend; indeed, the hours-long interview with Detective Richter included no discussion of a plea deal or a more lenient sentence. All the record shows is that Allen was considering providing information about the shooting to the police, and a suspect's desire to voluntarily disclose information to the police does not, without more, equate to an improper motive to testify untruthfully for the State in exchange for a reduced sentence. See, e.g., United States v. Prieto, 232 F3d 816, 821 (11th Cir. 2000) (declining to adopt a bright-line rule that statements made to the police after arrest are "automatically and necessarily contaminated by a motive to fabricate in order to curry favor with the government").[3]

If objections had been made and the trial court had ruled on them, we would accord great deference to the court's findings regarding when Allen's motive to fabricate arose. See Prieto, 232 F3d at 820-821. But as we have

---

[3] As the Eleventh Circuit recognized in Prieto:

[A] variety of motives may drive a person's decision to disgorge the details of a crime he has committed. For one, as this Court's predecessor recognized, a man's conduct is often controlled by his conscience. For another, it is certainly true that "the world's great religions teach in one form or another that confession is good for the soul and that by making confession one may be absolved . . . . To many people telling the truth and 'coming clean' satisfies a basic spiritual need of one who has transgressed and provides a measure of relief." Confession may also be an emotional response triggered by feelings of remorse and sorrow.

232 F3d at 821 (citations omitted).

11

explained, the record certainly would support a finding that the motive to fabricate implied on cross-examination had not developed at the time Appellant discussed the shooting with his sister and Bailey. We therefore cannot say that Appellant's trial counsel acted unreasonably in not raising objections that the trial court could properly have overruled. See <u>Davis</u>, 299 Ga. at 183.

(b) Appellant also contends that his trial counsel performed deficiently by failing to object to three statements made during Detective Richter's testimony, which Appellant claims improperly bolstered Allen's testimony. Appellant argues that his counsel should have objected when the detective testified on direct examination that in interviewing suspects, oftentimes "it'll take several hours . . . to get to the actual ultimate truth"; when he testified on cross-examination that "after I interviewed Allen, I was confident Allen was telling me the truth"; and when he testified on redirect examination that "I think [Allen] was telling the truth, but I had to at least pry to see."

OCGA § 24-6-620 says that the "credibility of a witness shall be a matter to be determined by the trier of fact . . . ." Under this rule, as we recently reiterated, "'[a] witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth. Credibility of a

12

witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury.'" Adkins v. State, 301 Ga. 153, 158 (800 SE2d 341) (2017) (citation omitted). When a witness's statement does not directly address the credibility of another witness, however, there is no improper bolstering. See Jones v. State, 299 Ga. 40, 44 (785 SE2d 886) (2016); Anderson v. State, 337 Ga. App. 739, 748 (788 SE2d 831) (2016). See also Adkins, 301 Ga. at 159-160. And when we evaluate whether testimony constitutes improper bolstering, we consider the disputed testimony in context. See id. at 158.

Detective Richter's first disputed statement was not specifically about Allen. Read in context, the detective did not say that Allen told him the ultimate truth; instead, the detective was explaining that in general, when interviewing suspects, they often make inconsistent statements and it often takes considerable time to get them to provide the complete story. See Adkins, 301 Ga. at 160. Appellant's counsel could reasonably have believed that an objection to this part of Detective Richter's testimony would fail, and counsel thus was not ineffective in not making such an objection. See Davis, 299 Ga. at 190.

The statements by Detective Richter on cross and redirect examination were subject to valid objection, but Appellant did not ask his trial counsel at the

13

motion for new trial hearing why counsel did not object to them. The United States Supreme Court has instructed that courts reviewing ineffective assistance of counsel claims "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U. S. at 689 (citation omitted). Thus, "when 'trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome' the presumption that his conduct was reasonable." Shaw v. State, 292 Ga. 871, 876 (742 SE2d 707) (2013) (citation omitted).

The record shows that in cross-examining Detective Richter, Appellant's trial counsel pursued a line of questioning designed to show the jury that the police did not conduct a thorough investigation of the murder and instead simply took Allen's version of events at face value; counsel then returned to this point in closing argument. Accordingly, counsel reasonably could have chosen not to object to the detective's statements regarding his personal belief in Allen's account because that testimony supported the defense theory that the State cut short its investigation based on blind faith in Allen, whose credibility

14

Appellant's trial counsel had already thoroughly attacked on cross-examination.

We have explained in the context of defense counsel's failure to object to an investigator's bolstering testimony that "a sound defense strategy is to show that the law enforcement investigation that led to the prosecution was not as thorough or objective as it should have been, and one way to make such a showing is by evidence that the investigators put too much faith in an unreliable witness." Jones v. State, 292 Ga. 593, 601 (740 SE2d 147) (2013). Indeed,

> a reasonable lawyer might have concluded that the bolstering testimony was not likely to be very harmful, inasmuch as "[i]t hardly would have surprised anyone observing the trial to learn" that law enforcement believed [the witness's] accounts, "and any rational juror could have surmised as much without being told explicitly."

Id. at 601-602 (citation omitted). Thus, Appellant has not shown that his trial counsel performed in a patently unreasonable way by not objecting to these aspects of Detective Richter's testimony as improper bolstering. See id. at 602.

(c) Finally, Appellant argues that his trial counsel was deficient in failing to object to two statements made by the prosecutor during closing

15

argument, which Appellant claims improperly vouched for Allen's credibility. Specifically, Appellant complains that his counsel should have objected when the prosecutor told the jury, referring to Allen's plea deal, "sometimes you have to make that kind of deal as a prosecutor to get to the truth," and when she said that Allen "eventually came forward with the truth . . . . Not all the truth, granted. But he told you that [Appellant] was the shooter."

A prosecutor may not express to the jury her personal belief about the veracity of a witness. See Bell v. State, 294 Ga. 443, 445 (754 SE2d 327) (2014). It is not improper, however, for counsel to urge "the jurors to come to the conclusion that the witnesses were believable based on the evidence presented." Menefee v. State, 301 Ga. 505, 515 (801 SE2d 782) (2017). See also Johnson v. State, 271 Ga. 375, 384 (519 SE2d 221) (1999) (holding that a prosecutor can urge a jury to find a witness credible so long as the attorney does not give a personal opinion as to the witness's credibility). Moreover, attorneys are "generally afforded wide latitude in making closing arguments." Menefee, 301 Ga. at 510.

At the motion for new trial hearing, Appellant's trial counsel testified that he did not object to the prosecutor's statements because he did not think they

16

were objectionable — and they were not obviously over the line in our view — and because he did not want to draw the jury's attention to them. See Jones, 292 Ga. at 602 ("[A] reasonable lawyer might have concluded that objecting to [bolstering] testimony could signal to the jury that the defense was worried about such testimony, thereby emphasizing the testimony and magnifying the harmful implications of it."). We cannot say that this tactical decision was "so patently unreasonable that no competent attorney would have followed such a course." Hartsfield v. State, 294 Ga. 883, 887 (757 SE2d 90) (2014). Accordingly, Appellant has not shown that his trial counsel was professionally deficient in this respect either.

3. Appellant contends that the trial court violated OCGA § 17-8-57 by making an impermissible comment on the evidence when the court explained to the jury that Allen's video recorded interview with the police had been redacted so that it included only the "relevant portions." The court's comment did not violate the statute. At the time of Appellant's trial, OCGA § 17-8-57 said in relevant part that it was "error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to

17

what has or has not been proved or as to the guilt of the accused."[4] To violate the statute in this respect, the court's comment had to pertain to a disputed issue of fact and express an opinion on whether that fact had or had not been proved at trial. See State v. Gardner, 286 Ga. 633, 634-635 (690 SE2d 164) (2010).

At trial, as Appellant requested, the irrelevant and objectionable portions of Allen's lengthy interview were redacted from the recording that the jury watched; even now Appellant does not dispute that the portions of the video that were played were relevant, and indeed irrelevant evidence is inadmissible. See OCGA § 24-4-402. The trial court did not express or suggest any opinion it had regarding Appellant's guilt or innocence or about what had or had not been proved. The challenged comment was meant simply to explain to the jury that the reduced length and the discernable interruptions in the video it saw were due to the agreed-upon redactions to leave what was relevant to the case. Accordingly, the comment was in the nature of a permissible clarification of

---

[4] OCGA § 17-8-57 was amended in 2015, primarily to change the standard of appellate review and remedy for judicial comments on whether facts at issue have or have not been proved where no objection to the comment was made at trial. See Burney v. State, 299 Ga. 813, 822 & n.9 (792 SE2d 354) (2016). Appellant did not object at trial to the court's comment that he now disputes, but because we conclude that the comment did not violate OCGA § 17-8-57, we need not decide whether the old or new version of the statute would apply to our review. See Burney, 299 Ga. at 823 n.10; Pyatt v. State, 298 Ga. 742, 747 n.9 (784 SE2d 759) (2016).

18

procedure. See <u>Linson v. State</u>, 287 Ga. 881, 884 (700 SE2d 394) (2010) (holding that because the court's comments regarding the playing of a videotaped interview were limited to "a clarification of procedures and did not address the credibility of witnesses or any fact at issue in the trial," they did violate OCGA § 17-8-57). The trial court's comment to the jury did not violate OCGA § 17-8-57.

<u>Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.</u>

Decided October 30, 2017.

Murder. Gwinnett Superior Court. Before Judge Beyers.

<u>Brian Steel</u>, for appellant.

<u>Daniel J. Porter</u>, District Attorney, <u>Lee F. Tittsworth, Charissa R. Henrich,</u> Assistant District Attorneys; <u>Christopher M. Carr</u>, Attorney General, <u>Patricia B. Attaway Burton</u>, Deputy Attorney General, <u>Paula K. Smith</u>, Senior Assistant Attorney General, <u>Aimee F. Sobhani</u>, Assistant Attorney General, for appellee.

19