**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P.J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 5, 2024**

# In the Court of Appeals of Georgia

A23A1780. PONDERS v. THE STATE.

HODGES, Judge.

A jury found Anthony Ponders ("Ponders") guilty of child molestation. Ponders appeals from the denial of his motion for new trial, asserting that he received ineffective assistance of trial counsel in several respects. For the reasons that follow, we affirm.

The evidence shows that A. M. lived with her grandparents, Rhonda and Anthony Ponders, and a number of other relatives. On February 12, 2021, Ponders woke up A. M. to clean up her dog's feces and urine. A. M., who was 14 years old at the time of the second trial,[1] testified that Ponders "expos[ed] his self" while he was

---

[1] Ponders' first trial ended with a mistrial.

in her room. According to A. M., Ponders spent five to ten minutes in her room with his "penis . . . out" of his shorts about six feet away from her, and she believed Ponders wanted her to see his penis. He walked from one side of the bed to the other in a way that made her look at it, even though she did not want to see it. He also left three dollars on her table, but did not say why. Earlier in the day, Ponders had taken A. M. to a store and bought her ice cream and a vape.

Haley Ponders, Ponders' daughter and A. M.'s aunt, walked by A. M.'s room and saw Ponders inside with A. M. Haley testified that Ponders' pants were down and she saw his buttocks exposed. She was concerned about what was happening in the room because Ponders was panicky when he saw her. In fact, A. M. testified that Ponders "ran out [of] the room" when Haley walked by. Haley entered A. M.'s room and talked to her about what she had witnessed. Haley also testified that she saw money thrown on A. M.'s night stand. After Haley spoke with A. M., she told A. M.'s grandmother to call the police, which she did after hearing what happened from both A. M. and Haley. A. M. testified that she would not have said anything because she was scared. The three women stayed locked in A. M.'s grandmother's room until the

police came. When the police arrived, A. M. told them what had happened. She was embarrassed and did not want to talk to them.

On cross-examination, A. M. testified that she told her grandmother shortly after the incident that what happened could have been an accident. On redirect, however, A. M. testified that she told the officer that she wanted the incident to be an accident because it would be easier for her and her family, but it was not an accident. A. M. testified unequivocally at trial that the incident was not an accident.

A. M.'s grandmother also testified at trial. According to her, Haley woke her up, frantic, and told her what had happened. Haley said "that she [saw] her daddy coming out of [A. M.'s] bedroom with his pants pulled down" and told her to call the police. Haley then brought A. M. to the grandmother's bedroom. A. M. was scared and told her that Ponders came into her room and "showed himself to her[,] . . . going from one side of her bed to the other to make sure that she [saw] it." A. M. said she tried to look away and not see it. The grandmother told police that Ponders had exposed himself to A. M. and was possibly on drugs. She later saw three dollars in A. M.'s room. The grandmother also testified about a phone conversation between Ponders and his brother where, according to her, Ponders admitted he exposed

himself to A. M. but claimed he should have been charged simply with indecent exposure. The recording was admitted into evidence and played for the jury.

An officer who responded to the scene wore a bodycam while he spoke with individuals at the scene, and the bodycam footage was played during the grandmother's testimony at trial. The officer also testified that Ponders exhibited manifestations of drug use, but noted that Ponders did not have any drugs on his person and was not tested for drugs on the night of the incident.

A similar transaction witness also testified at trial regarding Ponders' sexual abuse of her as a child.

Ponders testified that his shorts accidentally "slid down" and he covered himself up and started walking out of the door. According to Ponders, he gave A. M. three dollars to buy Takis snack chips the next day because she had brought in some kindling for the fireplace.

A jury found Ponders guilty of child molestation, and the trial court sentenced him to 20 years, with the first 19 years to be served in prison and the remainder on probation. Ponders filed a motion for new trial on the general grounds. Subsequently, his new appellate counsel filed both a motion for new trial on the general grounds and

an amended motion for new trial claiming ineffective assistance of trial counsel. The trial court denied Ponders' motion as amended, and this appeal followed.

Ponders argues on appeal that he received ineffective assistance of counsel because his trial counsel: (1) failed to object to alleged hearsay on numerous occasions; (2) failed to properly utilize Department of Family and Children Services ("DFCS") records; and (3) failed to assist Ponders at the sentencing hearing. The trial court concluded that Ponders' trial counsel did not render ineffective assistance. We find no reversible error.

To establish ineffective assistance of counsel, one must prove both deficient performance by counsel and resulting prejudice. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Brown v. State*, 302 Ga. 454, 457 (2) (807 SE2d 369) (2017). "To show that his lawyer's performance was deficient, [a defendant] must demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." (Citation omitted.) *Brown*, 302 Ga. at 457 (2). Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *Strickland*, 466 U. S. at 687-689 (III) (A). "This burden,

although not impossible to carry, is a heavy one, because when reviewing ineffective assistance of counsel claims, this Court applies a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." (Citations and punctuation omitted.) *Prescott v. State*, 357 Ga. App. 375, 385 (3) (850 SE2d 812) (2020); see also *Jones v. State*, 318 Ga. App. 342, 346 (3) (733 SE2d 400) (2012) (concluding that a defendant must show by clear and convincing evidence that the performance of his lawyer was not within the range of reasonable professional lawyering). A defendant

> bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

(Citation and punctuation omitted.) *Brown*, 302 Ga. at 457 (2). A finding of deficient performance requires a showing of errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U. S. at 687 (III); accord *State v. Worsley*, 293 Ga. 315, 323 (3) (745 SE2d 617) (2013).

6

Prejudice is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U. S. at 694 (III) (B); *Seabolt v. Norris*, 298 Ga. 583, 584-585 (783 SE2d 913) (2016).

> Even when a defendant has proved that his counsel's performance was deficient in this constitutional sense, he also must prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, [a defendant] must demonstrate a 'reasonable probability' of a different result, which, the United States Supreme Court has explained, is a probability sufficient to undermine confidence in the outcome.

(Citations and punctuation omitted.) *Brown*, 302 Ga. at 457 (2).

An ineffective-assistance claim is a mixed question of law and fact, and we accept the trial court's factual findings unless clearly erroneous but independently apply the law to those facts. *Hulett v. State*, 296 Ga. 49, 60 (5) (766 SE2d 1) (2014); see also *Strickland*, 466 U. S. at 698 (IV). Importantly, "[t]he standard regarding ineffective assistance of counsel is not errorless counsel and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance."

7

(Citation omitted.) *Davis v. State*, 290 Ga. 584, 587 (2) (b) (723 SE2d 431) (2012). The defendant bears the burden of proof on both prongs of an ineffective-assistance claim — if he fails to establish either prong, a reviewing court need not examine the other. See *Robinson v. State*, 298 Ga. 455, 462-463 (6) (782 SE2d 657) (2016). In short, the burden of proving a denial of effective assistance of counsel is a heavy one, and after reviewing Ponders' claims in accordance with these standards, we conclude that Ponders has not met his burden of demonstrating that his trial counsel was ineffective.

1. Ponders first claims that trial counsel was ineffective by failing to object to alleged hearsay on numerous occasions. He acknowledges, however, that the failure to object to hearsay is not reversible if it stemmed from a strategic decision. See *Martin v. State*, 360 Ga. App. 1, 7 (1) (b) (860 SE2d 582) (2021).

> Generally, counsel's decision to forgo objecting to hearsay testimony can be reasonable trial strategy. We evaluate the reasonableness of counsel's strategic decision in conjunction with the attendant circumstances of the challenged conduct with every effort made to eliminate the distorting effects of hindsight. Thus, deficiency cannot be demonstrated by merely arguing that there is another, or even a better, way for counsel to have performed.

(Citations and punctuation omitted.) Id.

At the motion for new trial hearing in this case, Ponders' trial counsel explained that he did not object to the statements complained of because: (i) they probably would have been admitted as a result of the child hearsay exception; and (ii) the individuals who testified also testified at Ponders' first trial, and trial counsel was going to address any alleged hearsay through cross-examination. According to trial counsel, based on his experience,

> you can, in fact, alienate a jury by too many objections. It almost appears that you're trying to hide something at times, so I let evidence come in sometimes because I understand that we're going to be able to rebut it in some other fashion in the future and so forth without alienate -- in my mind, alienating a jury or creating some sort of concern.

This was especially true in Ponders' case where, because this was his second trial, counsel had a preview of what the evidence was going to be.

Pretermitting whether the complained-of statements actually constituted objectionable hearsay,[2] we conclude that trial counsel's decision not to object, but to

---

[2] The State asserts that the subject statements did not constitute hearsay, were non-responsive to questions, were admissible as exceptions to the hearsay rule — specifically, excited utterances, past inconsistent statements, child hearsay, and present sense impression — or were merely cumulative of other admissible evidence.

address the alleged hearsay through cross-examination, was a reasonable trial strategy in this case. See *Richards v. State*, 306 Ga. 779, 781-782 (2) (a) (833 SE2d 96) (2019) (finding that trial counsel's strategic decision to not object to hearsay and rebut such statements via cross-examination or exposing inconsistencies in other witnesses' testimony is a reasonable trial strategy). Trial counsel's strategy was calculated and deliberate, he cross-examined and occasionally re-cross-examined witnesses, and his strategic move was neither patently unreasonable nor outside the wide range of reasonable professional assistance. See *Hughs v. State*, 312 Ga. 606, 612 (2) (864 SE2d 59) (2021) ("[A] tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it.") (citation and punctuation omitted).

Moreover, Ponders only asked trial counsel two generic questions regarding the alleged hearsay statements at the motion for new trial hearing; he did not separately question trial counsel regarding each instance he asserts in his appellate brief. As our Supreme Court has explained, "when trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome the presumption that his conduct was reasonable." (Citation and punctuation omitted.)

*Shaw v. State*, 292 Ga. 871, 876 (3) (b) (742 SE2d 707) (2013); see also id. at 874 (3) (a), n. 5 (holding that to carry his burden, the defendant must show deficiencies by competent evidence, for a silent or ambiguous record is not sufficient to overcome the presumption). Accordingly, we agree with the trial court that Ponders did not demonstrate that trial counsel performed deficiently in this regard.

2. Ponders next asserts that his trial counsel was ineffective by failing to properly utilize DFCS records to: (i) counter the State's theory that he was high the day in question; (ii) show that he gave A. M. dollar bills on a regular basis for non-sexual reasons; and (iii) show that A. M. liked Takis snack chips to support Ponders' claim that he gave her money for that purpose. We disagree.

At the outset, we note that Ponders' counsel at the motion for new trial hearing mentioned that the DFCS record log contained approximately 200 pages, but Ponders only introduced a few of those pages into evidence at the hearing, and trial counsel was not confronted with any of the pages or questioned about any evidence that was included within the pages. Moreover, trial counsel testified at the motion for new trial hearing that he reviewed the DFCS records and strategically chose not to use them at trial.

Turning first to Ponders' alleged drug usage on the day in question, Ponders argues that trial counsel should have introduced what appears to be a 2009 DFCS record log indicating that Ponders had been sent for a drug screen (though no result was indicated), and a February 16, 2009 DFCS record log stating that Ponders brought in a drug treatment completion certificate. First of all, the crime in this case occurred 12 years after the proffered evidence regarding Ponders' drug screen and treatment as noted in the DFCS record log, and Ponders does not indicate how these general record logs are relevant to the February 12, 2021 incident. Based on the length of time, alone, we cannot find that the DFCS record logs would counter the State's theory that Ponders was under the influence of drugs on the night of the incident. See *Harris v. State*, 359 Ga. App. 356, 362 (2) (b) (857 SE2d 815) (2021) (finding no reasonable probability that a three-year-old prescription for the same controlled substances found in the defendant's car would have changed the outcome of her trial for possession of a controlled substance). Instead, trial counsel challenged the State's theory through cross-examination.

Second, the mere failure to utilize certain evidence is insufficient to constitute ineffective assistance; the failure must be one indicating that the attorney performed

in an objectively unreasonable way. *Brown*, 302 Ga. at 457 (2). Here, trial counsel testified that he did not have evidence that Ponders was not high on the night of the incident, and trial counsel did not want to "get into . . . allegations . . . that might enhance the allegations of the meth usage[,]" especially since Ponders had a possession case involving methamphetamine pending against him at the same time as the molestation trial. This strategic decision not to utilize the DFCS records — showing Ponders' drug treatment 12 years before the crime at issue — because they could have highlighted Ponders' drug usage was a reasonable tactical decision. "[W]e cannot conclude that trial counsel provided ineffective assistance of counsel in failing to use the [evidence] at trial." *Sellers v. State*, 277 Ga. 172, 174 (4) (587 SE2d 35) (2003); see also *Brown v. State*, 226 Ga. App. 238, 239-240 (1) (486 SE2d 385) (1997) (concluding that counsel was not ineffective for failing to utilize records that had neither exculpatory nor impeachment value).

As for Ponders' other claims, he argues that trial counsel should have introduced an undated DFCS record log indicating that A. M. told a representative that "Pawpaw gives a dollar everyday" and that she and her brother "fight over TV time and Tahkies [sic] (chips) a lot[.]" According to Ponders, this evidence would

have supported the defense theory that Ponders gave A. M. money for Takis snack chips and not some sexual reason. We again find no merit in this assertion. First, Ponders has not shown that he was the individual giving A. M. "a dollar everyday." The DFCS record log does not contain a specific date, but the heading of the page introduced into evidence indicates the case name "Mcbee, Dorothy," and the page begins with "PGP[]s stated that they have taken care of their grandchildren for 11 years but MGP[]s help out too." It is undisputed that A. M. and her brother lived with the McBees, their paternal grandparents, until a few years prior to the trial in March 2022. It is further undisputed that A. M. referred to Ponders as "Pappy," not "Pawpaw." Accordingly, the evidence would not, as argued by Ponders, support the defense theory that Ponders gave A. M. a dollar every day for non-sexual reasons, much less the three dollars he left on her table on the night of the incident. Second, whether A. M. likes Takis was not in dispute during the trial; the issue was whether Ponders gave A. M. money immediately after the child saw his penis as a form of grooming.

Trial counsel's strategic decision not to use the DFCS record log at trial was neither patently unreasonable nor outside the wide range of reasonable professional

assistance. See *Hughs*, 312 Ga. at 612 (2). Accordingly, we agree with the trial court that trial counsel did not perform deficiently by failing to introduce the pages of the DFCS record log suggested by Ponders.

3. Finally, Ponders argues that trial counsel was ineffective by abandoning him at the sentencing hearing. Specifically, Ponders claims that trial counsel "presented no evidence in mitigation, asked no questions of the state's witness, made no legal argument, made no objections, and requested no leniency." Ponders also asserts that trial counsel "failed to prevent [him] from making inflammatory statements that essentially blamed the victim and denied any responsibility on the part of Mr. Ponders." Indeed, the record shows that although trial counsel was physically present at Ponders' sentencing hearing, he did not, according to the trial court, "make any attempt to further advance [Ponders'] case." In fact, trial counsel admitted at the motion for new trial hearing that he "did not participate at all in the sentencing portion." Ponders maintains that trial counsel's inaction resulted in his receipt of the maximum sentence permitted under law. See OCGA § 16-6-4 (b) (1) ("[A] person convicted of a first offense of child molestation shall be punished by imprisonment for not less than five nor more than 20 years and shall be subject to the sentencing and

15

punishment provisions of Code Sections 17-10-6.2 and 17-10-7."). Although we do not condone trial counsel's inaction, we find that his inaction did not prejudice Ponders.

At the sentencing hearing, trial counsel informed the court that Ponders had alleged numerous claims of ineffectiveness against him. In fact, it is apparent from the sentencing transcript that Ponders had lost all faith in his trial counsel. When the trial court asked Ponders if he wished for trial counsel to represent him with sentencing on two unrelated cases being heard at the same time as the case before us, Ponders declined, stating, "I don't want him to be my attorney on [those cases]." The trial court then continued those unrelated cases, and the State proceeded on sentencing in the case before us.

The State first introduced evidence showing that Ponders was a habitual felon and requested the maximum sentence for child molestation. When the State concluded, Ponders' trial counsel stated, "Your Honor, given the fact that I have been accused of ineffective assistance, I don't know that I can render any type of decision with respect to admissibility or an objection at this time." The State then called A. M.'s grandmother, who explained how the crime had affected her family. When she finished testifying, Ponders' trial counsel stated, "Your Honor, again, I don't know

that I can ask any questions given the circumstances." Trial counsel did not offer any mitigation evidence on behalf of Ponders. When asked if he wished to make a statement in regard to sentencing after the State had concluded its presentation of evidence, Ponders stated "yes" and then addressed the court. Specifically, Ponders argued that everything that happened to the family was because a dog urinated on the floor and his shorts fell down; it was not his fault.[3] The trial court then sentenced Ponders to 20 years, with the first 19 years to be served in prison and the balance to be served on probation.

Trial counsel explained at the motion for new trial hearing that although he was still the attorney of record in the case and had not filed a formal withdrawal, Ponders

> had filed a written complaint alleging about seven or eight different issues as to [trial counsel's] ineffectiveness and so forth. It was very clear that he was not happy with [trial counsel's] representation and [trial counsel] felt, based upon the written complaint he had filed, that I really

---

[3] Ponders stated, "This has affected our family. I wasn't the one that caused everybody to move. That wasn't me. They couldn't — they didn't pay the bills. [A. M.'s grandmother] asked them to leave, not me. A dog peed in the floor, my shorts fell down. I didn't do this. It was not to fill my sexual gratification. It was on account of a dog peed in the floor and that's what happened. And, Your Honor, I did not do this."

could not go forward and continue to represent him with that — that complaint pending.

According to trial counsel, Ponders was "very adamant" that he did not want trial counsel and wasn't satisfied with trial counsel's representation. That said, trial counsel testified that he spoke with Ponders numerous times prior to the sentencing hearing, specifically telling him that he could call witnesses and speak to the judge at sentencing. And the parties stipulated at the motion for new trial hearing that Ponders "would not have testified at sentencing if his counsel had instructed him not to."

Pretermitting whether trial counsel's lack of participation at Ponders' sentencing was proper given counsel's failure to withdraw or seek to demonstrate that a conflict existed, his inaction does not warrant a new *trial*. As pointed out by the trial court, the jury had already deliberated and returned a verdict. The question before us, then, is whether such inaction warrants a new sentencing hearing. See *Black v. State*, 264 Ga. 550, 552 (1) (448 SE2d 357) (1994) (concluding that "any errors committed during the sentencing phase do not justify a new guilt-innocence trial"); see also *Hall v. McPherson*, 284 Ga. 219, 226 (3), 235 (5) (663 SE2d 659) (2008) (holding that deficient performance in the sentencing phase only entitled the defendant to vacation

of his sentence); *Schofield v. Gulley*, 279 Ga. 413, 416 (I) (B) (614 SE2d 740) (2005) (finding that ineffectiveness in the sentencing phase required only a new sentencing trial). We find that it does not.

First, although Ponders makes some conclusory assertions that trial counsel's inaction resulted in the imposition of the maximum sentence, he presented no evidence or proffer at the motion for new trial hearing showing what mitigating evidence could have been presented or what actions or objections should have been taken by trial counsel, "much less that such additional evidence [or actions] in reasonable probability would have persuaded a rational trier of fact to reach a different sentencing verdict." *Hulett*, 296 Ga. at 69 (5) (c) (i); accord *Harris v. State*, 345 Ga. App. 80, 82 (1) (d) (812 SE2d 342) (2018). "Because [Ponders] has not satisfied his burden of demonstrating that he was prejudiced by counsel's performance at sentencing, this claim of ineffective assistance must fail." *Davis v. State*, 286 Ga. 74, 78 (4) (686 SE2d 249) (2009) (concluding that the defendant did not demonstrate that he was prejudiced by trial counsel's performance at sentencing when he failed to "suggest what evidence might have served to mitigate his sentence; he offered no

19

witnesses and proffered no affidavits on this issue at the hearing on the motion for new trial").

Apparently recognizing his failure to demonstrate what evidence trial counsel could have presented in mitigation,[4] what questions he could have asked of the State's witness, what legal arguments or objections he could have made, or what statements could have been offered as a plea for leniency at the sentencing hearing to minimize his sentence, Ponders' appellate brief focuses on trial counsel's failure to counsel him not to make a statement to the court. Ponders correctly notes that the trial court's order failed to recognize the parties' stipulation that he would have followed his counsel's advice not to make a statement. Notwithstanding this fact, we conclude that the trial court correctly denied Ponders' ineffective assistance claim in this regard because Ponders cannot show that he was prejudiced by trial counsel's failure to prevent him from making an inflammatory statement to the court.

Ponders' statement at sentencing did not differ from his testimony at trial. Ponders consistently stated during the trial that he stepped in dog urine and that his

---

[4] In fact, trial counsel testified that none of the potential mitigation witnesses suggested by Ponders returned his phone calls.

shorts fell down accidentally. He also denied taking any action for sexual gratification, but blamed the dog urine on the floor. Ponders' statements denying responsibility at the sentencing hearing were simply reiterations and cumulative of his testimony at trial. Because the same judge who decided Ponders' sentence also presided over his trial and had heard the evidence presented, and because this judge, "knowing whether [Ponders'] statement would have affected the choice of sentence, found that counsel was not ineffective[, w]e cannot say that this finding was 'clearly erroneous.'" (Citation omitted.) *Baines v. State*, 201 Ga. App. 354, 355 (1) (a) (411 SE2d 95) (1991); see generally *Hampton v. State*, 282 Ga. 490, 493 (2) (b) (651 SE2d 698) (2007) (stating that a "trial court's finding is entitled to particular deference given that the trial judge who conducted the evidentiary hearing on the amended new trial motion was the same judge who presided over [the defendant's] trial"). The trial court did not err in denying Ponders' motion for new trial on this ground.

*Judgment affirmed. Mercier, C. J., and Miller, P. J., concur.*